Luis A. Carrillo, Esq. SBN 70398
Michael S. Carrillo, Esq. SBN 258878
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375
Fax: (626) 799-9380

Dale K. Galipo, Esq. SBN 144074
**LAW OFFICES OF DALE K. GALIPO**
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARCO ANTONIO VAZQUEZ, SR.; LETICIA MOSQUEDA VAZQUEZ; CHRISTINA ELENA VAZQUEZ; MARIANA CONCEPCION VAZQUEZ; RAYLENE YVETTE COSIO; NAOMI MICHELLE COSIO; CHRISTOPHER JOEL VAZQUEZ; J.L.V. AND M.A.V., by and through their guardian ad litem CHRISTINA ELENA VAZQUEZ,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**COUNTY OF LOS ANGELES, SHERIFF ALEX VILLANUEVA; JONATHAN E. SHERIN, and DOES 1 through 10, inclusive,**<br><br>**Defendants.** | **Case No. 2:20-cv-1527-DSF-KSx**<br><br>**NOTICE OF UNOPPOSED EX PARTE PETITION AND UNOPPOSED EX PARTE PETITION FOR ORDER APPROVING MINORS' COMPROMISE' MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL S. CARRILLO IN SUPPORT AND EXHIBITS; DECLARATION OF CHRISTINA ELENA VAZQUEZ; [PROPOSED] ORDER** |

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORDS, PLEASE TAKE NOTICE THAT** Petitioner Christina Elena Vazquez, mother and Guardian *Ad Litem* for the minor Plaintiffs, J.L.V. and M.A.V., by and through Plaintiffs' counsel, Carrillo Law Firm, LLP and the Law Offices of Dale K. Galipo, will and hereby does petition this Court, *ex parte*, for an Order Approving the settlement of the claims of the minor Plaintiffs and the distribution of the settlement funds.

Petitioner makes this application under the Federal Rule of civil Procedure 17(c)(2), Local Rule 83-5.1, Local Rule 83-5.3, and California Code of Civil Procedure 372. The grounds for this application are set forth in the attached Memorandum of Points and Authorities and Declaration of Michael S. Carrillo.

Prior to filing this *ex parte* petition, Plaintiffs' counsel contacted defense counsel in compliance with Local Rule 7-19 through 7-19.1. Defense counsel is:

Jill Williams, Esq.
Scott J. Carpenter, Esq.
CARPENTER, ROTHANS & DUMONT
500 South Grand Avenue, 19th Floor
Los Angeles, California 90071
Tel: (213) 228-0400 - Fax: (213) 228-0401
Emails: jwilliams@crdlaw.com, scarpenter@crdlaw.com

On September 15, 2025, Plaintiffs' counsel contacted Defense counsel to inquire if they would oppose the filing of this petition and Ms. Williams stated that they **do not oppose** the filing of this petition and take no position on the settlement monies between Plaintiffs and their counsel. See Declaration of Michael S. Carrillo in Support of Unopposed *Ex Parte* Application for Approval of Minor's Compromise ("Carrillo Decl.") at ¶ 3.

///
///
///
///
///
///

The reason for seeking approval of the minor's compromise on an *ex parte* basis is due to the annuity purchase date currently set for October 29, 2025, which has been selected for the minor Plaintiffs by their guardian ad litem.

Respectfully submitted,

DATED:  September 17, 2025                CARRILLO LAW FIRM, LLP
                                         LAW OFFICES OF DALE K. GALIPO

                          BY:  _____
                                         MICHAEL S. CARRILLO, ESQ.
                                         Attorneys for Plaintiffs

## PETITION FOR APPROVAL OF MINOR'S COMPROMISE

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Christina Elena Vazquez, mother and guardian *ad litem* for the minor Plaintiffs J.L.V. and M.A.V., hereby submits a proposed order for approval of the minor's compromises in this matter, and requests that the Court approve the proposed distributions of the settlement funds for the benefit of the minor Plaintiffs J.L.V. and M.A.V.

The instant claims of minor Plaintiffs J.L.V. and M.A.V. arise out of the wrongful death of Marco Antonio Vazquez, Jr., the minors' father, after officers from Los Angeles County Sheriff's Department shot and killed him in the presence of his family members. The Plaintiffs in this action are the Decedent's wife, Christina Elena Vazquez, their five children, Mariana Concepcion Vazquez, Raylene Yvette Cosio, Naomi Michelle Cosio, J.L.V. and M.A.V., Decedent's parents, Marco Antonio Vazquez, Sr. and Leticia Mosqueda Vazquez, and Decedent's brother, Christopher Joel Vazquez. There are two Nominal Defendants/Counterclaimants, M.E.V. and Mark Anthony Vazquez-Escobar, who are represented by Dana Oliver as well.

The parties agreed to settle the case following mediation with Hon. Joseph S. Biderman (Ret.). The agreement obligates Defendant to pay to the Plaintiffs and their attorneys of record the total sum of Two Million Two Hundred Fifty Thousand Dollars and 00/100 ($2,250,000.00). Plaintiffs (including the guardian *ad litem* for the minor Plaintiff) have submitted this matter to Richard Copeland, Esq. in order to allocate the $2,250,000.00 gross settlement proceeds which are to be distributed as follows:

Christina Elena Vazquez - $900,000.00 and her attorneys

Mariana Concepcion Vazquez - $200,000.00 and her attorneys

Raylene Yvette Cosio - $200,000.00 and her attorneys

Naomi Michelle Cosio – $200,000.00 and her attorneys

J.L.V. – $200,000.00 and his attorneys

M.A.V. – $200,000.00 and his attorneys

Marco Antonio Vazquez, Sr. – $125,000.00 and his attorneys

Leticia Mosqueda Vazquez – $125,000.00 and her attorneys

Christopher Joel Vazquez – $100,000.00 and his attorneys

Richard Copeland conducted an analysis of the settlement and provided a recommendation for distribution of the settlement proceeds which is attached to the Carrillo Decl. Given the minors' ages, Guardian ad litem, Christina Elena Vazquez is facing 12 years of supporting minor children, and she intends to use the funds to support the home for her minor children.

Additionally, there are two Nominal Defendants: Milagros Huitzili Vazquez and Mark Escobar Vazquez who are part of this action.  They will be receiving $20,000.00 with each to receive $10,000.00.  This amount shall be paid by the attorneys for the Plaintiffs from the attorneys fees earned by counsel for Plaintiffs and shall not be reduced by the amount to be allocated to the Plaintiffs and minors herein.

Local Rule 83-5.1 provides that "[i]nsofar as practicable, hearings on petitions to settle, compromise or dismiss a claim in an action involving a minor or incompetent person shall conform to California Code of Civil Procedure Section 372 and California Rule of Court 3.1384." These code sections refer to the requirement of court approval and incorporate other rules requiring disclosure of various pertinent facts. California Rule of Court 3.1384 provides that "[a] petition for court approval of a compromise or covenant not to sue under Code of Civil Procedure section 372 must comply with rules 7.950, 7.951, and 7.952." Petitioners hereby provide and disclose the required information in this memorandum and the attached Declaration of Michael S. Carrillo.

## II. DISCUSSION

### A. Procedural Framework

District courts have a special duty, derived from the Federal Rule of Civil Procedure 17(c) to safeguard the interests of litigants who are minors. Rule 17(c) provides, in relevant part, that a district court "must appoint a guardian *ad litem* - or issue another appropriate order - to protect a minor or incompetent person who is unrepresented in an action." FED. R.

CIV. P. 17(c). In general, all transactions involving the claims of minors and their proceeds are subject to court approval.

The Local Rules provide the applicable procedural framework. Local Rule 17-1.2 provides that no claim involving a minor "shall be settled, compromised, or dismissed without leave of the Court embodied in an order, judgment, or decree." Local Rule 17-1.3 provides that "[i]nsofar as practicable, hearings on petitions to settle compromise or dismiss a claim in action involving a minor or incompetent person shall conform to California Code of Civil Procedure Section 372 and California Rule of Court 3.1384." These code sections refer to the requirement of court approval and incorporate other rules requiring disclosure of carious pertinent facts. California Rule of Court 3.1384 provides that "[a] petition for court approval of a compromise or covenant not to sue under Code of Civil Procedure section 372 must comply with rules 7.950, 7.951, and 7.952." Finally, Local Rule 17-1.5 provides that in all cases involving the claims of minors, "the Court shall fix the amount of attorney's fees."

Because J.L.V. and M.A.V. are minors, they and their guardian *ad litem*, propose to use the minors' portion of the award to individually purchase an annuity for each, which will distribute the money over time with interest, with guaranteed payments.

Accordingly, pursuant to the above Local Rule, Petitioner and Plaintiffs' attorney make the following disclosure and request that the Court approve the following transactions:

**B.     Disclosures pursuant to California Rule of Court 7.950**

(1)     Petitioner is Christina Elena Vazquez (for minor Plaintiffs). Petitioner is the natural mother and court-appointed guardian *ad litem* for the Plaintiffs J.L.V. and M.A.V.

(2)     The minor claimants are minor Plaintiffs J.L.V. and M.A.V.

(3)     The age and gender of the claimants are as follows: J.L.V. is a 9-year-old male, and M.A.V. is a 6-year-old male.

(4)     The nature of the Plaintiffs' claim is set forth in the operative complaint, the Fourth Amended Complaint filed in this action (Dkt #84).

(5)     The damages for the claimant arise from the minors' individual loss of their father's love, comfort, care, companionship, training, support, and guidance, as well as

survival damages for the Decedent's own loss of life, loss of enjoyment of life and physical pre- death pain and suffering, for which they are entitled to as successors in interest to the decedent.

(6)     The claimants have not received medical treatment in connection with this case.

(7)     Medical billing is not relevant.

(8)     The gross amount of the settlement that Defendant agrees to pay is $2,250,000.00. Of the $2,250,000.00 gross settlement amount, Plaintiffs and Petitioner agrees to distribute $200,000.00 to each minor plaintiff. Plaintiffs' counsel, the Law Offices of Dale K. Galipo and the Carrillo Law Firm, LLP, are requesting attorney fees of 40 percent of the $400,000.00 in gross settlement proceeds that Plaintiffs and Petitioner agree to distribute to the minor plaintiffs, or $160,000.00. The contingency retainer agreement between Plaintiffs' guardian ad litem and the attorneys provides for a 40 percent contingency fee and Section 1988 fees.

Plaintiffs' attorneys also seek reimbursement for litigation costs expended on behalf of the minors, totaling $3,310.00. The original total amount of litigation costs for this case was $18,344.28 and of that total, Christina Elena Vazquez will be paying $7,500.00, the adult children of the decedent will be paying $1,655.00 each, the parents of the decedent will be paying $920.00 each, and the brother of the decedent will be paying $729.28.

The contingency fee and advanced litigation costs are the amounts that the Carrillo Law Firm, LLP, and Law Offices of Dale K. Galipo would be due under the existing retainer agreement. This case involved a substantial amount of risk. If Plaintiffs had prevailed at trial and a likely appeal, statutory attorney fees due to the Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo under the retainer agreement likely would exceed one million dollars. If the Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo were not awarded a fully compensatory fee in such cases, they would not be able to take them. In turn, minor Plaintiffs such as J.L.V. and M.A.V. would not be able to attract competent counsel who could achieve similar results. In the professional opinion of the Plaintiffs' counsel, this was a fair outcome given the facts and circumstances of this case.

(9)    In summary, the gross amount of the settlement of the minors' claims is
$400,000.00. After deducting the agreed upon contingency attorney fee and litigation costs,
the total net settlement due to J.L.V. is $118,345.00; and to M.A.V. is $118,345.00. It is
proposed that for each minor Plaintiff, the total net settlement is to be used to fund a
guaranteed structured settlement annuity that will make scheduled payments directly to each
minor. Attached hereto as "**Exhibit C**" to the Declaration of Michael S. Carrillo, is a
proposed structured settlement annuity for each minor Plaintiff, which is incorporated herein
in its entirety by reference. Petitioner proposes to purchase a structured settlement annuity
for the net settlement amount for each child with periodic payment schedule as follows:

(a) J.L.V.

$50,000.00 - guaranteed lump sum payment at age 18 on 07/01/2034

$65,000.00 - guaranteed lump sum payment at age 20 on 07/01/2036

$82,939.39 - guaranteed lump sum payment at age 22 on 07/01/2038

(b) M.A.V.

$50,000.00 - guaranteed lump sum payment at age 18 on 08/26/2037

$75,000.00 - guaranteed lump sum payment at age 20 on 08/26/2039

$112,287.75 - guaranteed lump sum payment at age 22 on 08/26/2041

The guardian *ad litem,* Christina Elena Vazquez, believes that this is in the best
interests of each minor Plaintiff and understands that she is not entitled to any portion of the
funds and will use the money strictly for the benefit of the minor children.

(10)    The Petitioner and guardian *ad litem* have no claims against the minor
Plaintiffs in connection with the subject incident.

(11)    California Welfare and Institutions Code Section 14124.73 does not apply.

**C.    Disclosures pursuant to California Rule of Court 7.951**

(1) This petition was prepared by attorney Michael S. Carrillo (California Bar Number
258878), of the Carrillo Law Firm, LLP, located at 1499 Huntington Drive, Suite 402, South
Pasadena, California 91030, and Dale K. Galipo (California Bar Number 144074), of the
Law Offices of Dale K. Galipo, representing the minor Plaintiffs.

(2) The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo did not become concerned with this matter at the instance of any party against whom the claim of said minors is asserted.

(3)  The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo represent the Plaintiffs in this matter but are not employed by any other party or any insurance carrier involved in the matter.

(4) The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo have not received any compensation for their services in connection herewith from any person.

(5) The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo do not expect to receive any additional compensation for their services in connection with this case other than the contingency fees set forth herein and agreed to pay for Plaintiffs.

(6) The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo accepted this engagement for a contingency fee, plus reimbursement for any litigation costs advanced. The retainer agreements provide for a 40 percent attorney fee if the matter concludes after commencement of a lawsuit, and for recovery of Section 1988 fees.

### D.    Movant's Endorsement

Petitioner has made a careful and diligent inquiry and investigation to ascertain the facts relating to the incident giving rise to the minors' claim, the parties responsible for the incident, and the nature, extent, and seriousness of the minors' injuries. Petitioner further understands the transactions proposed in this Petition and requests that the Court approves it.

Petitioner recommends the transactions and the proposed distribution to the minors as being fair, reasonable, and in the best interest of the minors, and request that the Court approve this Petition and make such other and further orders as may be just and reasonable.

For J.L.V. and M.A.V. Petitioner, Christina Elena Vazquez, specifically requests that the Court enter an order approving the proposed annuity described in "**Exhibit C**". Each minor shall receive annuity payments which be made directly to the minors beginning at age 18 as set forth in the attached **"Exhibit C".**

### E.    Attorney's Fees and Minor Plaintiff

Local Rule 17-1.5 provides that in call cases involving the claims of minors, "the Court shall fix the amount of attorney's fees." See also Local Rule 83-5.3 (identical rule effective June 1, 2012, superseded by current rule). The attorney's fee that is requested to be approved represents the amount that the Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo would be due under the existing retainer. This is also the amount that the adult Plaintiffs are paying for the same legal services, and Plaintiffs' attorneys submit that the result should be no different because their clients are minors.

In *Robidoux v. Rosengren*, 638 F.3d 1177, 1182 (9th Cir. 2011), the district court rejected a proposed settlement under conditions where 56 percent of the total settlement value was allocated to attorney's fees. The Ninth Circuit reversed on the grounds that "the district court's special duty to protect minor Plaintiffs requires only that the district court consider whether the net recovery of each minor Plaintiff is fair and reasonable, without regard to the amount received by adult co-Plaintiffs and what they have agreed to pay Plaintiffs' counsel." The Ninth Circuit remanded for consideration of whether the minors' recoveries were fair and reasonable, without regard to the amount of attorneys' fees. This holding suggests that 56 percent of the total recovery being allocated to attorneys' fees is not per se disallowed. *See also Nephew v. Santa Rosa Mem'l Hosp.,* No. 15-CV-01684-JSC, 2015 WL 5935337, at *3 (N.D. Cal. Oct. 13, 2015) ("requested 33% attorneys' fee award is reasonable in light of the signed contingency agreement"); *Caldwell v. Boeing Co.,* No. 14CV2636-BEN KSC, 2015 WL 4199986, at *2 (S.D. Cal. July 9, 2015) ("Under Robidoux, the Court is not required to conduct an inquiry into the reasonableness of attorneys' fees); *Gill v. Macy's Corp. Servs.,* No. 1:12-CV-01985-AWI, 2013 WL 4478898, at *2 (E.D. Cal. Aug. 19, 2013) (approving a similar transaction that involved paying one portion of the total recovery to finance an annuity for the minor Plaintiff, the remainder to Plaintiffs' attorneys); *Reyes v. City of Pinole*, No. C 12-2636 LB, 2013 WL 3157902, at *2 (N.D. Cal. June 20, 2013) (approving a settlement, "half of which is allocated for attorneys' fees"); *McCue v. S. Fork Union Sch. Dist.*, No. 1:10-CV-00233-LJO, 2012 WL 2995666, at *7 (E.D. Cal. July

23, 2012) (a contingency fee of 40 percent might be justified); *Arriaga v. Target Corp.*, No. CIV. S-10-1167 LKK, 2012 WL 1720503, at *1 (E.D. Cal. May 15, 2012) (settlement of $275,000, with distribution of $109,519.97 to minor and $165,480.03 to attorneys).

The minor's claim in this case involved a substantial amount of risk and was vigorously litigated. Plaintiffs' attorneys' experience in these cases and work product resulted in a favorable result for the minor Plaintiffs. As a result, the minors will enjoy payments at ages 18, 20, and 22.

If the minor Plaintiffs' attorneys were not awarded a fully compensatory fee in such cases, similarly experienced, skilled, and reputable attorneys would be discouraged from taking them. Specifically, it would provide a disincentive for skilled attorneys to take cases involving minor Plaintiffs, which if anything, require a higher level of legal expertise and experience than cases involving adult Plaintiffs. Civil rights cases are difficult enough for attorneys to take and win, without the additional disincentive of an arbitrarily reduced fee at the end. In sum, a reduction of the full contractual fee would inhibit the provision of high quality of legal services to civil rights victims who are minors and Plaintiffs such as the minors in this case would not be able to attract competent counsel who could achieve similar results. Accordingly, Plaintiffs' attorneys in this case request the approval of the full amount of their attorney's fee and costs without reduction, as agreed by the Petitioner.

### III.    CONCLUSION

For the reasons above, the Court should approve the proposed settlement of the minor's claim and enter the proposed disbursement orders submitted concurrently herewith.

Respectfully submitted,

DATED:  September 17, 2025                    **CARRILLO LAW FIRM, LLP**
                                             **LAW OFFICES OF DALE K. GALIPO**

                                    BY:  _____
                                             MICHAEL S. CARRILLO, ESQ.
                                             Attorneys for Plaintiffs

## DECLARATION OF MICHAEL S. CARRILLO

I, Michael S. Carrillo, hereby declare as follows:

1.     I am an attorney licensed to practice law in this United States District Court. I am one of the attorneys of record for Plaintiffs J.L.V. and M.A.V. and their guardian *ad litem* in this action. I have personal knowledge of the matters stated herein and would and could testify competently thereto if called. I make this declaration in support of the above motion.

2.     Prior to the filing of this *ex parte* application, Plaintiffs' counsel contacted defense counsel in compliance with Local Rule 7-19 through 7-19.1. Defense counsel is:

Jill Williams, Esq.
Scott J. Carpenter, Esq.
CARPENTER, ROTHANS & DUMONT
500 South Grand Avenue, 19th Floor
Los Angeles, California 90071
Tel: (213) 228-0400 - Fax: (213) 228-0401
Emails: jwilliams@crdlaw.com, scarpenter@crdlaw.com

3.     On September 15, 2025, the undersigned Plaintiffs' contacted defense counsel, Jill Williams, Esq., to inquire if the defense would not oppose the filing of an *ex parte* filing of a Petition for approval of the minor's compromise and settlement. Ms. Williams indicated that the defense has no opposition to the filing of this petition and that defendants take no position on how the settlement monies are allocated between the plaintiffs and their counsel. The reason for seeking approval of the minor's compromise on an *ex parte* basis is to ensure that the rates currently locked in by the life insurance companies for the annuity structured payment schedules, which have been vetted and selected for minor Plaintiffs by their guardian *ad item*, do not expire.  Additionally, this family wishes to have closure on the incident that has severely affected the entire family and this matter still needs to be approved by the County of Los Angeles which takes a substantial amount of time.

4.     Petitioner is the *guardian* ad *litem* for minor Plaintiffs J.L.V. and M.A.V. Petitioner has retained my office to represent each minor child regarding their claims related to the County of Los Angeles. The instant claims of minor Plaintiffs J.L.V. and M.A.V arise

out of the wrongful death of Marco Antonio Vazquez, Jr., the minors' father, after officers from Los Angeles County Sheriff's Department shot and killed him in the presence of his family members on October 6, 2019.

5.     The Plaintiffs in this action are the Decedent's wife, Christina Elena Vazquez, their five children, Mariana Concepcion Vazquez, Raylene Yvette Cosio, Naomi Michelle Cosio, J.L.V. and M.A.V., Decedent's parents, Marco Antonio Vazquez, Sr. and Leticia Mosqueda Vazquez, and Decedent's brother, Christopher Joel Vazquez.

6.     The parties have agreed to settle this matter following mediation with Hon. Joseph Biderman in the amount of $2,250,000.00 total.  The Plaintiffs, including the guardian *ad litem*, have agreed to utilize the services of Richard Copeland to allocate the distribution of the settlement funds and that the $2,250,000.00 gross settlement proceeds are to be distributed as follows:

      a)  Christina Elena Vazquez - $900,000.00 and her attorneys

      b)  Mariana Concepcion Vazquez - $200,000.00 and her attorneys

      c)  Raylene Yvette Cosio - $200,000.00 and her attorneys

      d)  Naomi Michelle Cosio – $200,000.00 and her attorneys

      e)  J.L.V. – $200,000.00 and his attorneys

      f)  M.A.V. – $200,000.00 and his attorneys

      g)  Marco Antonio Vazquez, Sr. – $125,000.00 and his attorneys

      h)  Leticia Mosqueda Vazquez – $125,000.00 and her attorneys

      i)  Christopher Joel Vazquez – $100,000.00 and his attorneys

7.  Attached hereto as **Exhibit "A"** is the Distribution of the Settlement breakdown by Mr. Copeland.

8.     Additionally, there are two Nominal Defendants: Milagros Huitzili Vazquez and Mark Escobar Vazquez who are part of this action.  They will be receiving $20,000.00 with each to receive $10,000.00.  This amount shall be paid by the attorneys for the Plaintiffs from the attorneys fees earned by counsel for Plaintiffs and shall not be reduced by the

amount to be allocated to the Plaintiffs and minors herein.

9.    Petitioner is Christina Elena Vazquez, who is the natural mother and court-appointed guardian *ad litem* for the claimants and minor Plaintiffs. The age and gender of the claimants are as follows J.L.V. is a 9-year-old male, and M.A.V. is a 6-year-old male.

10.    The nature of J.L.V. and M.A.V.'s claims in this lawsuit are set forth in the operative Fourth Amended Complaint filed in this action (Dkt #84).

11.    Minor Plaintiffs' claims and damages in this case arise from the loss of their father's love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, support and guidance, as well as survival damages on behalf of their father as his successors in interest. The minor Plaintiffs have not received medical treatment in connection with this case and medical billing is not relevant.

12.    The moving guardian ad *litem* does not have any claims against the minor Plaintiffs in connection with the subject incident.  The guardian *ad litem* also understands that she is not entitled to any portion of her children's settlement funds and that such funds belong to her minor children.

13.    The gross amount of the settlement in this case for all claims is $2,250,000.00. All Plaintiffs and Petitioner agree to distribute $200,000.00 of the $2,250,000.00 to each minor Plaintiff totaling $400,000.00.

14.    Plaintiffs' attorneys, the Carrillo Law Firm LLP, and the Law Offices of Dale K. Galipo, seek attorney's fees pursuant to the contingency retainer agreement between Plaintiffs and their attorneys, which provides for a 40% percent ($160,000.00) contingency, and reimbursement for advanced litigation costs for the minors' case.

15.    Plaintiffs' attorneys also seek reimbursement for litigation costs expended on behalf of the minors, totaling $3,310.00. The original total amount of litigation costs for this case was $18,344.28 and of that total, Christina Elena Vazquez will be paying $7,500.00, while the remaining Plaintiffs, the adult children of the decedent will be paying $1,655.00 each, the parents of the decedent will be paying $920.00 each, and the brother of the decedent will be paying $729.28. Attached hereto as **Exhibit "B"** is a true and correct copy

of the costs expended in this matter. Those litigation costs include costs for filing fees, service fees, mediation fees, records, etc.

16.     Upon Court approval, the net amount that each minor Plaintiff will receive is $118,345.00 after deduction of $80,000.00 each in Attorney Fees (40%), and deduction of $1,655.00 each for advanced costs of litigation. A structured settlement annuity will provide income for each minor Plaintiff and each annuity will be purchased for $118,345.00. Attached hereto at **Exhibit "C"** is a true and correct copy of the Terms and Conditions of the Annuity for each minor Plaintiff.

17.     The County of Los Angeles must still approve the settlement and is waiting to finalize the approval process upon the court granting the instant petition.

18.     The cost of the structured settlement/annuity is: $118,345.00 and pursuant to the Terms and Conditions of the Annuity, each minor Plaintiff will receive the following:

    a. Plaintiff J.L.V. will receive the following payments: $50,000.00 guaranteed lump sum payment at age 18 on 07/01/2034, $65,000.00 guaranteed lump sum payment at age 20 on 07/01/2036, and $82,939.39 guaranteed lump sum payment at age 22 on 07/01/2038.

    b. Plaintiff M.A.V. will receive the following payments: $50,000.00 guaranteed lump sum payment at age 18 on 08/26/2037, $75,000.00 guaranteed lump sum payment at age 20 on 08/26/2039, and $112,287.75 guaranteed lump sum payment at age 22 on 08/26/2041. (**Exhibit "C"**).

19.     This structured settlement/annuity is based upon a projected annuity purchase date of October 29, 2025.

20.     Petitioner and Plaintiffs are represented by the Carrillo Law Firm, LLP located at 1499 Huntington Drive Suite 402, South Pasadena, CA 91030, and the Law Offices of Dale K. Galipo located at 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367.  The Carrillo Law Firm, LLP did not become concerned with this matter at the instance of any party against whom the claims are asserted or of any party's insurance carrier.

21.    The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo are not employed by any other party, or any insurance carrier involved in the matter at the instance of any party against whom the claims are asserted or of any party's insurance carrier.

22.    The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo are not employed by any other party, or any insurance carrier involved in the matter have not received any compensation for their services in connection with the minor Plaintiffs' claims from any person.

23.    The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo do not expect to receive any additional compensation for their services in connection with this case other than the contingency fees set forth herein and agreed to pay for Plaintiffs.

24.    The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo accepted this engagement for a contingency fee, statutory fees under Section 1988, plus reimbursement for any costs advanced.  The retainer agreement provides for a (40%) percent attorneys' fee on the gross of all sums recovered. Given the nature of the work involved in this matter, it is submitted that the attorneys' fee requested in the Petition is appropriate.

25.    Petitioner has helped make a careful and diligent inquiry and investigation to ascertain the facts relating to witnesses and their factual basis of loss of Decedent's comfort, care, love, companionship, training, support, and guidance for Decedent's death, which gave rise to the minor's claims, the parties responsible for the incident, and the nature, extent and seriousness of the minor's claims. Petitioner further understands the transactions proposed in this petition, and requests that the Court approve it.

26.    Petitioner recommends to the Court that these transactions and the proposed distribution to the minors as being fair, reasonable, and in the best interests of the minors and requests that the Court approve them and make such other and further orders as may be just and reasonable.

27.    Petitioner requests that the Court enter an order approving the proposed structure settlement/annuity described above. Petitioner submits that these disbursements are

reasonable and in her children's best interests, and requests that the Court approve them and make such other and further orders as may be just and reasonable.

28.    Attached hereto as **"Exhibit D"** is a sample annuity policy for the court's review.

29.    Attached hereto as **"Exhibit E"** is a ratings sheet for MetLife Insurance Company.

30.    Attached hereto as **"Exhibit F"** is a sample statement of Irrevocable Guarantee for the annuities through MetLife.

31.    The parties mediated this case with Hon. Joseph Biderman (Ret.) which resulted in a settlement in this matter for $2,250,000.00, with each side paying their own costs and attorney fees. The settlement was contingent upon the approval of the Los Angeles County Board of Supervisors. My office has been informed that in order to expedite payment for the settlement to all parties, County Counsel for Los Angeles County is requesting an order on Petitioner's Minor Compromise Petition and for that reason, Petitioner requests the relief herein.

32.    The Carrillo Law Firm, LLP, and the Law Offices of Dale K. Galipo accepted this engagement for a contingency fee, plus reimbursement for any costs advanced.  The retainer agreement provides for a (40%) percent attorneys' fee on the gross of all sums recovered if the matter concludes after commencement of a lawsuit. Given the nature of the work involved in this matter, it is submitted that the attorneys' fee requested in the Petition is appropriate.

33.    This case involved a substantial amount of risk and was vigorously litigated. Our office have a substantial amount of experience in civil rights matters and have been involved in some high-profile matters. Additionally, my co-counsel, Dale K. Galipo has had tremendous experience in the litigation of civil rights cases. If Plaintiffs had prevailed at trial and a likely appeal, statutory attorney's fees due to the Carrillo Law Firm, LLP, and Dale K. Galipo under the retainer agreements likely would exceed one million dollars. If we were not awarded a fully compensatory fee in such cases, we would not be able to take them. In turn,

Plaintiffs would not be able to attract competent counsel who could achieve similar results. My co-counsel, Dale Galipo was also involved in the litigation and settlement in this matter and agrees that this result was favorable in this case.

34.    In my professional opinion, this result was a fair outcome given the facts and circumstances of this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this September 17, 2025, in South Pasadena, California.

BY: _____

MICHAEL S. CARRILLO, ESQ.

EXHIBIT A

Richard T. Copeland, Esq.

# CONFLICT SOLUTION SERVICES
### Mediation & Conflict Coaching

**450 N. Brand Boulevard, Suite 600, Glendale, California 91203**
**Phone:  (310) 968-6070    e-mail:  rtc@conflict-solution.com**
**www.conflict-solution.com**

November 1, 2023

**Via E-mail:  mc@carrillofirm.com**
Michael Carrillo, Esq.
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, California 91030

**Via E-mail:  dalekgalipo@yahoo.com**
Dale Galipo, Esq.
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367

**Re:  _Distribution of Settlement Funds in Marco Vazquez, et.al. v. County of Los Angeles, et.al._**

| | |
|---|---|
| **Nature of Case:** | **Civil Rights Violations (42 U.S.C. 1983 & State Law)** |
| **Number of Plaintiffs:** | **9 (Marco Antonio Vazquez, Sr.; Leticia Mosqueda Vazquez; Christina Elena Vazquez; Mariana Concepcion Vazquez; Raylene Yvette Cosio; Naomi Michelle Cosio; Christopher Joel Vazquez; and minors J.L.V. and M.A.V., by and through their _guardian ad litem_, Christina Elena Vazquez)** |
| **Settlement Amount:** | **$2,250,000 (Global amount to be divided amongst all Plaintiffs)** |

Dear Mr. Carrillo and Mr. Galipo:

Thank you for contacting me to render a recommendation regarding the distribution of settlement funds between the nine plaintiffs in the matter of _Marco Antonio Vazquez, Sr., et.al. v. County of Los Angeles, et.al._ (United States District Court for the Central District of California Case Number 2:20-CV-01527-DSF-KSx).  The reasons for my recommendation for the division of the global settlement proceeds of TWO MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($2,250,000) between Plaintiffs Marco Antonio Vazquez, Sr., Leticia Mosqueda Vazquez, Christina Elena Vazquez, Mariana Concepcion Vazquez, Raylene Yvette Cosio, Naomi Michell Cosio, Christopher Joel Vazquez, and minors J.L.V. and M.A.V., are set forth below.

## I.    BASIS FOR OPINION CONCERNING DISTRIBUTION OF FUNDS

My recommendation regarding the division of settlement funds in this case is based upon: (1). my review and analysis of the materials provided to me; (2). my experience and education with respect to the distribution of funds between multiple parties; (3). my experience and knowledge as a litigator and mediator in Civil Rights matters involving law enforcement agencies; (4). California and Federal law concerning damages in Civil Rights cases; and (5) recent jury verdicts in Civil Rights cases in the United States District Court for the Central District of California.

### A.  Materials Reviewed

The following materials were considered in deriving the recommended distribution of settlement proceeds: (1). Fourth Amended Consolidated Complaint for Damages (filed March 10, 2023); (2) Plaintiffs' Mediation Brief dated August 30, 2022; (3). Plaintiffs' Agreement to Allow for Allocation Process executed September 11, 2023; (4).  "Release in Full Settlement and Compromise" in connection with the matter entitled *Marco Antonio Vazquez, Sr., et.al. v. County of Los Angeles, et.al.* (United States District Court for the Central District of California Case Number 2:20-CV-01527-DSF-KSx); (5).  Death Certificate for Marco Antonio Vazquez, Jr. dated October 23, 2019; (6). Progress Report dated May 23,2022 from Irma Lopez, LMFT with respect to Christina Vazquez; (7). Autopsy Report for Marco Antonio Vazquez, Jr. signed by Deputy Medical Examiner Zuhha Ashraf, M.D. on October 22, 2019; (8) Docket in the matter entitled *Marco Antonio Vazquez, Sr., et.al. v. County of Los Angeles, et.al.* (United States District Court for the Central District of California Case Number 2:20-CV-01527-DSF-KSx); and (9). Interviews I conducted on Zoom with Plaintiffs Marco Antonio Vazquez, Sr., Leticia Mosqueda Vazquez, Christina Elena Vazquez, Mariana Concepcion Vazquez, Raylene Yvette Cosio, Naomi Michell Cosio, and Christopher Joel Vazquez on October 24, 2023.

### B.  Experience and Education Regarding Distribution of Funds Between Multiple Parties

I have worked in the legal field since 1995 and have been a licensed California attorney since 2001, litigating civil cases from 2001 to 2014.  From 2001 to 2011, I spent 4 years as a defense attorney representing businesses and individuals in general and professional liability matters, and 6 years as a plaintiff's attorney prosecuting claims for individuals in cases involving personal injury, employment issues, Civil Rights violations and wrongful death.  From 2006 to 2011, I handled over twenty cases on behalf of Plaintiffs suing law enforcement agencies for Civil Rights violations, many of which involved the death of a family member as a result of a law enforcement contact.  On dozens of occasions as a plaintiff's attorney, I worked with clients to come to an equitable distribution of settlement proceeds where a single sum of money was required to be split between multiple people.

I began practicing as mediator in 2012 and have done so on a full-time basis since 2014, handling cases involving personal injury, Civil Rights violations, wrongful death, insurance bad faith, employment issues, business disputes, ADA violations and ERISA matters, among others. I have mediated more than 1,500 cases, with more than 1,000 involving alleged Civil Rights violations and more than 400 involving multiple plaintiffs and/or wrongful death in which I am frequently asked to assist the parties in determining the division of settlement proceeds.  In addition to my own work both formerly as a litigator and currently as a mediator in proposing a distribution of settlement funds in cases involving multiple plaintiffs, I continuously review local jury verdicts to stay current as to trends in the division of funds awarded to plaintiffs in Southern California lawsuits.  I am familiar with nearly every jury verdict in a Civil Rights case that has been rendered in the Central District of California since 2013.    I have also spent significant time analyzing (both through self-study and formal coursework) how monetary funds that are set aside for tragic events (such as the September 11,2001 attacks and the 2013 Boston

Marathon bombing) are distributed to large groups of people.  I am currently serving as the mediator in multiple civil class action lawsuits in which hundreds of people are seeking monetary compensation for injuries sustained from alleged Civil Rights violations.

I have over 700 hours of mediation and dispute resolution training including having obtained a Masters in Dispute Resolution from Pepperdine University Law School's Straus Institute for Dispute Resolution (2013) and certificates for having completed Harvard University's Program on Negotiation Mediation Workshop (2011) and Advanced Mediation Workshop (2015).  I have been a featured presenter at Continuing Legal Education courses five times since 2015, have served as a guest speaker on dispute resolution at UC Irvine Law School and Pepperdine University's Graziadio School of Business.   I have twice taught a quarter long course entitled "Managing Conflict Effectively" to undergraduate students at UCLA. Additionally, I was featured in an article by former Alternative Dispute Resolution Director for the Central District of California, Gail Killefer, entitled "Rick Copeland, Civil Rights Mediator" in the Summer 2018 edition of *Alternative Dispute Resolution in the Ninth Circuit—ADR Newsletter*, and was the author of "Resolving societal conflict with R.E.S.P.E.C.T." in the February 2021 edition of *Advocate Magazine.*

## II.    CASE ANALYSIS

### A.  Brief Summary of the Case

On October 6, 2019, Marco Antonio Vazquez, Jr., was suffering a mental health crisis while at home.  Los Angeles County Sheriff's Deputies were called to the house by the family twice that day, with the second call indicating that Marco was suicidal and suffering from hallucinations. During the course of their second encounter with Marco, deputies used lethal force against him by firing eleven shots which eventually caused his death.

On February 14, 2020, a lawsuit was filed against the County of Los Angeles and several Los Angeles County Sheriff's Deputies for having caused Marco's death.   The operative Fourth Amended Complaint for Damages contains nine causes of action—five for violation of Federal Civil Rights pursuant to 42 U.S.C. Section 1983 and four state law claims for negligence, battery, negligent infliction of emotional distress, and violation of California Civil Code Section 52.1 (The Bane Act).

On or about August 23, 2023, Plaintiffs and the Defendants agreed to a global settlement of TWO MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($2,250,000) to resolve the case in its entirety.

### B.  Summary of Interviews with Plaintiffs

The following is a brief summary of interviews conducted with the Plaintiffs via Zoom on October 24, 2023:

### 1. Marco's Wife—Christina

Christina met Marco when she was 13 years old.   Christina had vivid recall of her life with Marco, remembering many dates and events.  They began having children together when they were young, with Christina having birthed two daughters (Naomi and Mariana) before the age of 20.  Life's circumstances led to Christina raising their daughters alone for approximately 15 years.  During their time apart, Christina had another daughter, Raylene, who Marco held out as his own child.   Christina said that no matter what was happening in their lives, she and Marco were always friends and in 2014 they got back together as a couple which culminated in marriage in 2015.  Christina said, "he was my friend more than anything," and that they stuck together through life's challenges.

Christina stated that she relied on Marco financially to cover the monthly expenses with his income from his job at ATL, while she used her job to cover insurance.  The couple had two boys after getting married, J.L.V., who was just 3 years old at the time of Marco's death, and M.A.V., who was a little over a month old when his father was killed.  Because of their young ages at the time their father died, neither J.L.V. nor M.A.V. participated in the interviews.

### 2. Marco's Adult Daughters—Mariana, Naomi and Raylene

Mariana, Naomi and Raylene, all of whom are in their 20's, expressed fond memories of their time with Marco.  In particular, all three shared stories in which they laughed about their father teaching them how to drive.  From time to time, Marco would let the girls put makeup on him.  He would also watch movies and dance with them.  While he would playfully tease his daughters, Marco was thoughtful and would show up at their places of work with things like ice cream, and in Mariana's case, new scrubs for her job in the medical profession.  They indicated that they miss being with their father and wish that they could do those things with him again.

### 3. Marco's Parents—Marco, Sr. and Leticia

Leticia said that Marco's absence has left a big void in her life.  He would kiss her on the forehead when he came home, and she misses just having him around.  Her son was someone with a "big heart" who cared for people who were unhoused and people suffering from addiction.  She was proud of Marco for having become a truck driver and instructor.  For Leticia, she gets lost in the past, finds it difficult to concentrate and says that "every day is a struggle."  She has a hard time living in her home.  She suffers from anxiety, has lost her sense of peace, and says that she is not the same person that she was before.

Marco, Sr., talked about how excited he was when his son was born.  When Marco, Jr. was a child, they would go to the mountains and the park to learn about nature.  Marco, Sr. taught his son how to play soccer and he would laugh with Marco, Jr. about the stories he would bring home from school.  He was proud of Marco, Jr. as an adult for helping others and being kind, friendly and generous.  Marco, Sr. said that he "hurts a lot" and that he finds life to be difficult.  Despite this, Marco, Sr. wants to focus on the best moments with his son and said, "God took one from me (Marco, Jr.), but he gave me five (grandchildren)."

### 4.  Marco's Brother—Christopher

Marco was Christopher's only brother.  He says that movies and songs remind him of Marco.  When Marco asked Christopher to be the best man in his wedding, Christopher said he would only agree to do it if Marco did "The Truffle Shuffle" (from the movie "Goonies"), in the middle of a restaurant, which Marco did.  As children, Christopher recalled them "messing with each other," and having tickle fights.  Christopher is suffering from depression as a result of his brother's death and has days when he does not sleep at all.  Christopher "misses Marco a lot," and finds it difficult to visit his parent's home.  Life has not been the same for Christopher since losing his brother, and he has anxiety when he sees police officers.

### C.  California and Federal Law Relating to Damages

In this action, had this case been tried, there would have been four separate categories of damages for which Plaintiffs could have potentially recovered: (1). Wrongful death damages; (2).  Damages for Marco's pre-death pain and suffering and Marco's loss of life; (3) Damages for interference with familial relations; and (4). Damages for having witnessed Marco's death (bystander infliction of emotional distress).

### 1.  Wrongful Death Damages

When awarding damages to a plaintiff at the end of a wrongful death trial, California jurors are instructed as follows:

> "If you decide that plaintiff has proved her claim against defendant for the death of plaintiff's loved one, you also must decide how much money will reasonably compensate plaintiff for the death of her loved one. This compensation is called "damages."  Plaintiff does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

> The damages claimed by plaintiff fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

> Plaintiff claims the following economic damages:

> 1. The financial support, if any, that plaintiff's loved one would have contributed to the family during either the life expectancy that her loved one had before her death or the life expectancy of plaintiff, whichever is shorter;
> 2. The loss of gifts or benefits that plaintiff would have expected to receive from her loved one;
> 3. Funeral and burial expenses; and
> 4. The reasonable value of household services that plaintiff's loved on would have provided.

> Plaintiff also claims the following noneconomic damages:

1. The loss of her loved one's love, companionship, comfort, care, assistance, protection, affection, society, moral support

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

In determining name of plaintiff's loss, do not consider:
1. Plaintiff's grief, sorrow, or mental anguish;
2. The pain and suffering of Plaintiff's loved one; or
3. The poverty or wealth of plaintiff.

In computing these damages, consider the losses suffered by all plaintiffs and return a verdict of a single amount for all plaintiffs. The judge will divide the amount between the plaintiffs."

*California Civil Jury Instructions (CACI)* 3921-Wrongful Death (Death of an Adult), 2020 Edition, in relevant part.

Under *California Code of Civil Procedure* Section 377.60(a), Christina and the five children would be able to recover for this category of damages.

## 2. Damages for Interference with Familial Relations

All Plaintiffs (with the exception of Christopher) asserted a cause of action against the defendants for Interference with Familial Relations under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. Section 1983.  *See e.g., Smith v. City of Fontana* (9th Cir. 1987) 818 F.2d 1411.   Damages for this cause of action include loss of companionship, society (*Id.*) and emotional distress.  *See, e.g. Watson v. City of San Jose* (9th Cir. 2015) 800 F.3d 1135.

## 3. Damages for the Pre-Death Pain and Suffering and Loss of Life of Marco, Jr.

In a Civil Rights Action brought under 42 U.S.C. Section 1983, the Estate, or successor in interest to the Estate of a decedent, is entitled to recover damages for the decedent's pre-death pain and suffering, and loss of life.  *See, e.g. Valenzuela v. City of Anaheim* (9th Cir. 2021) 6 F.4th 1098 and *Chaudhry v. City of Los Angeles* (9th Cir. 2014) 751 F.3d 1096.  Under *California Code of Civil Procedure* Section 377.30, a cause of action that survives the death of a person may be pursued by the decedent's successor in interest, which person(s) is determined by the *California Probate Code.*  Generally, a decedent's cause of action that arises while the decedent is married is deemed community property (*California Family Code* Section 780), meaning that the surviving spouse would be deemed the successor in interest to the decedent's estate (*California Probate Code* Sections 6400-6401) and entitled to the entirety of the damages for pre-death pain and suffering and loss of life.   Accordingly, in this case, only Christina would have likely obtained recovery for this category of damages.

**4.   Damages for Negligent Inflict of Emotional Distress**

California allows for the recovery of emotional distress damages for loved ones who witness the death of a family member.  *See, e.g., CACI 1621.*   Emotional distress includes suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.  *Id.*  In this case, the Plaintiffs who witnessed this tragic event could make a claim for this category of damages.

**D.  Analysis of Damages in this Case**

As a preliminary matter, it is undeniable that Marco, Jr.'s death has tremendously impacted each and every one of his family members.  Had this matter proceeded to a trial and the Plaintiffs prevailed, prior verdicts reflect that the distinct categories of damages would have most likely resulted in the Plaintiffs receiving differing monetary awards.  The recommendations being made in this allocation are reflective of those legal and historical realities.

Taking Christina's claim first, this is the rare occasion in a Federal Civil Rights action involving death in the Central District of California where a widow is a Plaintiff.  Dating back to May 1, 2021 when the Courts re-opened following the COVID-19 pandemic, there have been 10 Civil Rights trials in the Central District of California that have involved death, and of those 10 cases, only 1 involved a Plaintiff who was a widow.  In addition to her damages for wrongful death, interference with familial relations and bystander infliction of emotional distress, because Christina, as the surviving widow, is the sole successor in interest to Marco, Jr.'s estate, she would have been entitled to the full amount of damages for Marco, Jr.'s pre-death pain and suffering and loss of life.  In recent years, trials resulting in Plaintiff's verdicts have yielded the following distribution of amounts between damages for wrongful death ("WD") and damages for the decedent's pre-death pain and suffering and loss of life ("PSLL"):

1. *Herrera v. City of Los Angeles (16-2719-DSF)-*WD: $2.5 million; PSLL: $1 million
2. *Mears v. City of Los Angeles (15-8441-JAK)-* WD: $3 million; PSLL: $2.5 million
3. *Archibald v. County of San Bernardino* **(16-1128-AB)-** WD:  $8.5 million; PSLL: $7 million
4. *Craig v. County of Orange (17-491-CJC)-*  WD:  $1.4 million; PSLL:  $2 million
5. *Valenzuela v. City of Anaheim (17-2094-CJC)-*WD: $3.6 million; PSLL:  $9.6 million
6. *Frias v. City of Los Angeles (16-4626-PSG)-* WD: $3.5 million; PSLL:  $1 million
7. *V.R. v. County of San Bernardino (19-1023-JGB)—*WD: $2.5 million; PSLL: $2 million
8. *Aguilar v. City of Los Angeles* **(17-4382-CBM)-**WD: $1.2 million; PSLL:  $1.5 million
9. *Murrillo v. City of Los Angeles* **(22-8738-FMO)-**WD: $12 million; PSLL: $11.8 million
10. *Zelaya v. City of Los Angeles* **(20-8382-ODW)-**WD: $1.5 million; PSLL:  $12 million

The damages for pain and suffering and loss of life in the above referenced cases ranged from 22% to 89% of the total compensatory damage awards.

In addition to potentially having received a significant percentage of a jury award for the pre-death pain and suffering and loss of life category of damages, Christina's situation is distinguishable from the other Plaintiffs in that the death of her husband will result in a substantial loss of financial support.  As Christina mentioned in her interview, with respect to their jobs, she looked to Marco, Jr. to bring home the majority of the income, while she used her employment primarily for benefits purposes.  Currently, with J.L.V. being 7 years old and M.A.V. being 4 years old, Christina is facing 14 years of supporting minor children.  Based on these factors, it is recommended that Christina receive **NINE HUNDRED THOUSAND DOLLARS ($900,000)** of the settlement proceeds.

Generally, in cases where a decedent leaves behind both children and parents, jurors historically award higher amounts to the children than to the parents.  (*See, e.g., **V.R. v. County of San Bernardino (19-1023-JGB)***—$2.5 million award for wrongful death—$2 million to the child and $500,000 to the adult parent of decedent).  Additionally, as mentioned above, the children would be entitled to both wrongful death and interference with familial relations damages, whereas the parents would likely not be entitled to wrongful death damages.  Accordingly, here it is recommended that Marco, Jr.'s children, Raylene, Naomi, Mariana, J.L.V. and M.A.V ***each*** receive **TWO HUNDRED THOUSAND DOLLARS ($200,000),** with Marco, Jr.'s parents, Marco, Sr. and Leticia, ***each*** receiving **ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($125,000)**.  Finally, it is recommended that Christopher receive **ONE HUNDRED THOUSAND DOLLARS ($100,000)** for his bystander infliction of emotional distress claim.

### III.     SUGGESTED DISTRIBUTION OF GROSS SETTLEMENT PROCEEDS

In light of the foregoing, it is my recommendation that the gross settlement proceeds be distributed as follows:

| **Plaintiff Name** | **Gross Recovery** |
| --- | --- |
| Christina Elena Vazquez | $900,000 |
| Raylene Yvette Cosio | $200,000 |
| Naomi Michelle Cosio | $200,000 |
| Mariana Concepcion Vazquez | $200,000 |
| J.L.V. | $200,000 |
| M.A.V. | $200,000 |
| Marco Antonio Vazquez, Sr. | $125,000 |
| Leticia Mosqueda Vazquez | $125,000 |
| Christopher Joel Vazquez | $100,000 |
| | |
| **Total:** | **$2,250,000** |

Should an individual Plaintiff wish to dispute his or her allocated share, no later than ten (10) calendar days after having been sent the recommended distribution, said Plaintiff shall advise Plaintiffs' counsel of his or her desire to contest the allocation.  No later than ten (10) calendar days after Plaintiffs' counsel receives notification from any Plaintiff as to her desire to contest the allocation, a hearing shall take place with the contesting Plaintiff, Plaintiffs' counsel and me via a Zoom video conference, at which time Plaintiff may present evidence and arguments concerning the objection to the allocated share.  No later than five (5) days after said hearing, I shall advise the contesting Plaintiff (through his or her counsel) as to whether the allocated share has changed or stayed the same.  In the event that the allocated amount has changed, all Plaintiffs shall be notified of the adjusted allocation, at which point the objection process described above shall recommence.  Upon either all Plaintiffs signing an agreement as to the acceptance of the allocation, and/or ten (10) days lapsing without the submission of an objection by any Plaintiff, the settlement allocation shall be deemed final.

Thank you again for asking me to assist with this matter.  Should you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Richard T. Copeland
CONFLICT SOLUTION SERVICES

RTC/

# EXHIBIT B

| | Case Name: | **MARCO ANTONIO VAZQUEZ, SR. ET AL. V. COUNTY OF LOS ANGELES, ET AL.** | | |
| | Case Number: | **2:20-cv-01527-DSF-KS** | | |
| | Attorney: | **Miguel Flores** | | |
| | **Total Cost:** | **$18,344.28** | | |
| **Invoice Date:** | **Amount:** | **Payee:** | **Description:** | **Category:** |
| 2/14/2020 | $400.00 | Pay.gov | Filing Fee | Filing & Motion Fees |
| 8/20/2019 | $1,080.00 | Rodriguez & Associates | Investigation | Investigator Fees |
| 9/21/2019 | $2,820.00 | Rodriguez & Associates | Investigation | Investigator Fees |
| 8/31/2022 | $3,605.00 | Judge Biderman | Mediation | Mediation Fees |
| 11/1/2023 | $5,400.00 | Richard Thomas Copeland | Mediation Fees | Mediation Fees |
| 11/5/2022 | $165.00 | Global Network Legal Support | Service Fees | Process Server |
| 2/4/2020 | $60.00 | Jackeline Luna | Process Service | Process Server |
| 4/1/2020 | $194.75 | One Legal | Process Service - Complaint | Process Server |
| 3/9/2020 | $80.00 | One Legal | Process Service | Process Server |
| 3/6/2020 | $114.75 | One Legal | Process Service | Process Server |
| 6/28/2022 | $26.25 | Better Instant Copy | Whittier Hospital Records re Christopher Vazquez | Records Fees |
| 10/25/2019 | $47.00 | Los Angeles County - Coroner | Coroner's Report | Records Fees |
| 8/31/2022 | $93.08 | Tital Legal Services | Kaiser Radiology Records (re Marco Vazquez, Jr.) | Records Fees |
| 9/8/2022 | $57.60 | Titan Legal Services | Resurrection Cemetery (re Marco Vazquez) | Records Fees |
| 8/31/2022 | $57.38 | Titan Legal Services | Paramount Mortuary Records | Records Fees |
| 8/31/2022 | $60.23 | Titan Legal Services | Kaiser Billing Records (re Marco Vazquez, Jr.) | Records Fees |
| 8/31/2022 | $104.90 | Titan Legal Services | Kaiser Medical Records (re Marco Vazquez, Jr.) | Records Fees |
| 2/18/2020 | $25.90 | UPS | Shipping | Shipping & Mailing |
| 3/3/2020 | $26.08 | UPS | Shipping | Shipping & Mailing |
| 10/10/2019 | $25.86 | UPS | Shipping | Shipping & Mailing |
| 10/10/2019 | $25.86 | UPS | Shipping | Shipping & Mailing |
| 11/6/2023 | $3,874.64 | Dale Galipo | Litigation Costs | Misc Cost |



Sandy Aguirre <sa@carrillofirm.com>

---

## Fwd: Pay.gov Payment Confirmation: CACD CM ECF

1 message

---

**Arcy Carranza** <ac@carrillofirm.com>                                    Fri, Feb 14, 2020 at 3:35 PM
To: Sandy Aguirre <sa@carrillofirm.com>

this receipt for filing fee Marcos Vasquez case

──────── Forwarded message ────────
From: <notification@pay.gov>
Date: Fri, Feb 14, 2020 at 3:34 PM
Subject: Pay.gov Payment Confirmation: CACD CM ECF
To: mc@carrillofirm.com <mc@carrillofirm.com>, ac@carrillofirm.com <ac@carrillofirm.com>


Your payment has been submitted to Pay.gov and the details are below. If you have any questions or you wish to cancel
this payment, please contact CACD CM/ECF Helpdesk at (213) 894-0242.

Application Name: CACD CM ECF
Pay.gov Tracking ID: 26NIF5RV
Agency Tracking ID: 0973-25335189
Transaction Type: Sale
Transaction Date: Feb 14, 2020 6:34:35 PM

Account Holder Name: MICHAEL S CARRILLO
Transaction Amount: $400.00
Card Type: Visa
Card Number: ************6621


THIS IS AN AUTOMATED MESSAGE.  PLEASE DO NOT REPLY.

## Statement

**Rodriguez and Associates Investigative Services**
**License# 26557**
**P.O. Box 21282**
**Bakersfield, California 93390**
**(661) 364-9480**

Bill To: Carrillo Law Firm, LLP                                    Date 8/20/2019
        1499 Huntington Drive, Suite 402                  Statement: 2019-83
        South Pasadena, CA 91030
        Reference: Marcos Vazquez vs. L.A.S.D.

| Date | Service Description | Mileage | Expense | Hours | Hourly Rate | Amount |
|------|---------------------|---------|---------|-------|-------------|--------|
| 11/8/2019 | **Follow up investigation with Leticia Vazquez and the interview of Dr. Lydia Schindler regarding the fatal Shooting of Marcos Vazquez by Los Angeles County Deputies.** | | | *10 hrs. total* | $75.00 | $750.00 |
| 11/9/2019 | **Report preparation.** | | | *2 hrs.* | $75.00 | $150.00 |
| 11/8/2019 | **Total Mileage 300 @ $.60** | | | | | $180.00 |
| | | | | | **Due** | |
| | | | | | | $1080.00 |

**Make Checks payable to**
**Rodriguez and Associates Investigative Services**
**P.O. Box 21282**
**Bakersfield, California 93390**
**Thank you for your business**

### Statement
**Rodriguez and Associates Investigative Services**
**License# 26557**
**P.O. Box 21282**
**Bakersfield, California 93390**
**(661) 364-9480**

Bill To: Carrillo Law Firm, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Reference: Vazquez vs. LASD

Date 9/21/2019
Statement: 2019-78

| Date | Service Description | Mileage | Expense | Hours | Hourly Rate | Amount |
|---|---|---|---|---|---|---|
| 10/10/2019 | Investigation and interviews regarding the fatal shooting of Marco Antonio Vazquez Jr. by LASD Deputies. | | | 15 hrs. | $75.00 | $1125.00 |
| 10/10/2019 | Total mileage 350, enhanced by Sylmar fire @ $.60 | 350 | | | | $210.00 |
| 10/16/2019 | Additional Investigation and interviews regarding the fatal shooting of Marco Antonio Vazquez Jr. by LASD Deputies. | | | 14 hrs. | $75.00 | $1050.00 |
| 10/16/2019 | Total mileage 300 @ $.60 | 300 | | | | $180.00 |
| 10/20/2019 | Report & evidence preparation | | | 3hrs. | | $255.00 |
| | | | | | **Due** | |
| | | | | | | $2820.00 |

**Make Checks payable to**
**Rodriguez and Associates Investigative Services**
**P.O. Box 21282**
**Bakersfield, California 93390**
**Thank you for your business**

Home / Payment Confirmation

# Payment Confirmation
## Thank you for your payment.

Invoice Number

#2022-179
Case Name

Vazquez v. County of Los Angeles
Credit Card #

**** **** **** 7555
**Grand Total:**
$3605.00

# JUDGE BIDERMAN MEDIATION

Scheduling and Case Administration

✉ Nikki@CaseManagerServicesInc.com

📞 (424) 537-1001

## INVOICE

Date:  November 1, 2023

Invoice #:VAZvCOLASDA-2023-1

To:

**Via E-mail:  mc@carrillofirm.com**
Michael Carrillo, Esq.
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, California 91030

**Via E-mail:  dalekgalipo@yahoo.com**
Dale Galipo, Esq.
LAW OFFICES OF DALE K. GALIPO
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367

### Services Rendered

| | |
|---|---|
| **Description:** | **Settlement Distribution Analysis** |
| **Case Name:** | *Marco Vazquez, Sr., et.al. v. County of Los Angeles, et.al.* |
| **Charge:** | **$5,400.00 (8 hours worked at $675 per hour)** |

**Total Amounts Currently Due:  $5,400.00**

Checks to be made payable to "Richard Copeland" and to be mailed to Richard Copeland, 530 S. Lake Avenue, #733, Pasadena, California 91101.

**THANK YOU FOR YOUR BUSINESS!**

*Global Network Legal Support*
316 W. 2nd Street
Ste. #1110
Los Angeles CA 90012

# INVOICE

| Account No: | 110 |
|---|---|
| Invoice No: | 1469 |
| Invoice Date: | 11/05/22 |
| Invoice Period: | 07/22/22 |

*Carrillo Law Firm, LLP*
Attn: Accounts Payable
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030

For billing inquiries please contact Gonzalo Ponce
213-922-9400

| Date | Job No. | Dept. | Reference No. | Svc Type | Original details | Destination/POD | Charge | Breakdown | Total |
|---|---|---|---|---|---|---|---|---|---|
| 07/22/22 | | | Vazquez | Serve Entity | Carrillo Law firm, LLP<br>1499 Huntington Drive<br>Suite 402<br>South Pasadena, CA 91030<br>Hazel Ramirez | Patricia Miramontes<br>Employee # 537978<br>6631 Passons Blvd.<br>Pico Rivera, CA 90660<br>Served Sgt. Leobardo Trujillo<br>07/26/22 at 10:10 am | Base | 115.00 | $115.00 |
| Comment: | | | | | CV20-01527/ Vazquez Vs. County of Los Angeles/ Summons and Complaint | | | | |
| 07/22/22 | | | Vazquez | Related Entity | Carrillo Law firm, LLP<br>1499 Huntington Drive<br>Suite 402<br>South Pasadena, CA 91030<br>Hazel Ramirez | Gregory Nickell<br>Employee # 537978<br>6631 Passons Blvd.<br>Pico Rivera, CA 90660<br>Served Sgt. Leobardo Trujillo<br>07/26/22 at 10:10 am | Base | 25.00 | $25.00 |
| Comment: | | | | | CV20-01527/ Vazquez Vs. County of Los Angeles/ Summons and Complaint | | | | |
| 07/22/22 | | | Vazquez | Serve | Carrillo Law firm, LLP<br>1499 Huntington Drive<br>Suite 402<br>South Pasadena, CA 91030<br>Hazel Ramirez | Vincent Cisneros<br>Employee # 519470<br>6631 Passons Blvd.<br>Pico Rivera, CA 90660<br>Served Sgt. Leobardo Trujillo<br>07/26/22 at 10:10 am | Base | 25.00 | $25.00 |
| Comment: | | | | | CV20-01527/ Vazquez Vs. County of Los Angeles/ Summons and Complaint | | | | |
| | | | | | Carrillo Law firm, LLP<br>1499 Huntington Drive<br>Suite 402<br>South Pasadena, CA 91030 | | Base | | $0.00 |
| Comment: | | | | | | | | | |
| | | | | | Carrillo Law firm, LLP<br>1499 Huntington Drive<br>Suite 402<br>South Pasadena, CA 91030 | | Base | | $0.00 |
| Comment: | | | | | | | | | |
| | | | | | | | **TOTAL:** | | **$165.00** |

Created by:
Patricia Romero-Cubero
May 19, 2011

1

11/5/2022
8:10 PM

# Date

02/04/2020

### JACKELINE LUNA

### PROCESS SERVICE

| Quantity | Description | | Total |
|----------|-------------|---|-------|
| 1 | File Christopher Vasquez claim at L.A. County Kenneth Hall | | $60 |
| | Marco A. Vasquez case | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | **Total Due** | | **$60** |

Paid CK# 3007
(LAC)

# ONE LEGAL

1400 North McDowell Blvd. Suite 300
Petaluma, CA 94954
1-800-938-8815 ext. 1
TIN: 26-0259046

## Credit Card Sale

| Date | 4/1/2020 |
|---|---|
| **Customer** | 0115985 |
| **Credit Sale** | 02584367 |
| **Amount Due** | $0 |

| Bill To |
|---|
| Carrillo Law Firm, LLP |
| 1499 Huntington Drive |
| Suite 402 |
| South Pasadena CA 91030 |

| | |
|---|---|
| Order Number | 14492566 |
| Contact | Hazel Ramirez |
| Attorney | Michael Carrillo |
| Billing Code | 2:20-cv-1527 |
| Case Title | Marco Antonio Vazquez et. al. v County of Los Angeles et. al. |
| Court | United States District Court, Central District of California |
| Court Transaction Number | |
| Case Number | 2:20-cv-1527 |
| Documents | Complaint, Summons, Civil Case Cover Sheet, Certificate , Order |
| Assignment Details | Substitute Service-Individual - Jonathan E. Sherin |

| ONE LEGAL FEES | AMOUNT |
|---|---|
| Process Serving Copy Charge | $14.75 |
| Process Serving - Three Day | $80.00 |
| Mailing Declaration | $20.00 |
| Additional Service Attempts - Three Day | $80.00 |
| **SUBTOTAL** | **$194.75** |

| FEES SUMMARY | AMOUNT |
|---|---|
| One Legal Fees | $194.75 |
| **TOTAL CHARGED** | **$194.75** |

# ONE LEGAL®

**Credit Card Sale**

1400 North McDowell Blvd. Suite 300
Petaluma, CA 94954
1-800-938-8815 ext. 1
TIN: 26-0259046

| Date | 3/9/2020 |
|------|----------|
| **Customer** | 0115985 |
| **Credit Sale** | 02554120 |
| **Amount Due** | $0 |

| Bill To |
|---------|
| Carrillo Law Firm, LLP |
| 1499 Huntington Drive |
| Suite 402 |
| South Pasadena CA 91030 |

| Order Number | 14492564 |
|--------------|----------|
| Contact | Hazel Ramirez |
| Attorney | Michael Carrillo |
| Billing Code | 2:20-cv-1527 |
| Case Title | Marco Antonio Vazquez et. al. v County of Los Angeles et. al. |
| Court | United States District Court, Central District of California |
| Court Transaction Number | |
| Case Number | 2:20-cv-1527 |
| Documents | Complaint, Summons, Civil Case Cover Sheet, Certificate , Order |
| Assignment Details | Company Serve - County of Los Angeles |

| ONE LEGAL FEES | AMOUNT |
|----------------|--------|
| Process Serving - Three Day | $80.00 |
| **SUBTOTAL** | **$80.00** |

| FEES SUMMARY | AMOUNT |
|--------------|--------|
| One Legal Fees | $80.00 |
| **TOTAL CHARGED** | **$80.00** |

# ONE LEGAL®

1400 North McDowell Blvd. Suite 300
Petaluma, CA 94954
1-800-938-8815 ext. 1
TIN: 26-0259046

| Bill To |
|---|
| Carrillo Law Firm, LLP |
| 1499 Huntington Drive |
| Suite 402 |
| South Pasadena CA 91030 |

# Credit Card Sale

| | |
|---|---|
| **Date** | 3/6/2020 |
| **Customer** | 0115985 |
| **Credit Sale** | 02550878 |
| **Amount Due** | $0 |

| | |
|---|---|
| Order Number | 14492565 |
| Contact | Hazel Ramirez |
| Attorney | Michael Carrillo |
| Billing Code | 2:20-cv-1527 |
| Case Title | Marco Antonio Vazquez et. al. v County of Los Angeles et. al. |
| Court | United States District Court, Central District of California |
| Court Transaction Number | |
| Case Number | 2:20-cv-1527 |
| Documents | Complaint, Summons, Civil Case Cover Sheet, Certificate , Order |
| Assignment Details | Substitute Service-Individual - Sheriff Alex Villanueva |

| ONE LEGAL FEES | AMOUNT |
|---|---|
| Mailing Declaration | $20.00 |
| Process Serving Copy Charge | $14.75 |
| Process Serving - Three Day | $80.00 |
| **SUBTOTAL** | **$114.75** |

| FEES SUMMARY | AMOUNT |
|---|---|
| One Legal Fees | $114.75 |
| **TOTAL CHARGED** | **$114.75** |

# INVOICE

Better Instant Copy
Facility: PIH Health - Whittier Hospital
12401 Washington Blvd
Whittier, CA 90602
BIC Federal Tax ID: 95-4781500
**Invoice Date: 06/28/2022**

### * ATTENTION: NEW ROI VENDOR. SEND PAYMENT TO BIC. *

**CARRILLO LAW FIRM**
**1499 HUNTINGTON DR**
**SOUTH PASADENA, CA 91030**

This is the notification/invoice for the medical and/or billing records you requested from **PIH Health - Whittier Hospital**. Your records have been placed on our Delivery website for secure download. To ensure that you go to the correct website, either click on the following link or manually type it into your browser's address bar **exactly as shown here:** **https://bic.trimsnet.net/pickup**

You will need INVOICE/TRACKING NUMBER and DOWNLOAD CODE *shown below* as well as PATIENT DATE OF BIRTH. Go to the retrieval website. Enter invoice/tracking number near bottom of screen. Follow instructions. *If you receive a tracking number error, please check that you are on the correct website.*

If a Balance Due is shown below, you must first pay the processing fee balance of $26.25 before accessing the records.

**HOW TO PAY:**

**CREDIT CARD:** To pay securely online, go to **https://bic.trimsnet.net/pickup** . Follow instructions. Upon making payment, requested records will be immediately available for download.

**CHECK:** To pay by check, make check payable to Better Instant Copy and mail to address at top of this page. Write invoice/tracking number on your check. Please allow an average of 14 days for check to reach us.

| | | | |
|---|---|---|---|
| Invoice/Tracking Number: | **771-40525** | Patient Name: | **VAZQUEZ, CHRISTOPHER** |
| Download Code: | **Not shown** | Case/Claim ID: | n/a |

| Description | Qty | Unit Price | Amount |
|---|---|---|---|
| Processing Charge | 1 | $26.25 | $26.25 |
| | | **Total** | **$26.25** |
| | | Payments | $26.25 |
| | | **BALANCE DUE** | **$0.00** |

*[Handwritten notes:]* MARCO VAZQUEZ CASE PAID 6·28·22

Invoice Questions: **(562) 698-0811 x13685. Our hours of operation are 8AM - 4PM PT.**

Additional Notes:
REQUESTED DOCUMENTS: MEDICAL
DATES OF SERVICE: 10/2019-PRESENT

Printed: 06/28/2022

LOS ANGELES COUNTY
**MEDICAL EXAMINER-CORONER**
*"Law and Science Serving the Community"*

**ORDER COMPLETED**

You will receive an order confirmation email within the next few minutes.

| | | | |
|---|---|---|---|
| Order # | **52163** | Status: | **Ready to Process** |
| Order Date: | **10/25/2019** | Shipping Method: | |
| Grand Total: | **$47.00** | Due Balance: | **$47.00** |

**Billing Address**

Luis Carrillo
Carrillo Law Firm, LLP
1225 Diamond ave
South Pasadena, CA 91030
US
Phone:
hr@carrillofirm.com

**Shipping Address**

Luis Carrillo
Carrillo Law Firm, LLP
1225 Diamond ave
South Pasadena, CA 91030
US
Phone:
hr@carrillofirm.com

**Order Summary**

Product Name
QTY
Total

Coroner's Report

1
**$47.00**



**Titan Legal Services, Inc.**
P.O. Box 867
Torrance, CA 90508
Phone: (310) 464-8655  Fax: (310) 464-8654

# INVOICE

| ACCOUNT NO: | INVOICE DATE: | INVOICE NO: |
|---|---|---|
| CARR38 | 8/31/2022 | OP183224-03-01 |

Bill To:
**Vanessa Beltran**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Ordered By:
**Luis Carrillo, Esq. / Michael Carrillo, Esq.**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Claim No:

Insured:

Date of Loss:

Plaintiff: **Marco Vazquez, Sr., et al.**
Defendant: **County of Los Angeles, et al.**

Client File No.:

Pertaining To: **Marco Vazquez, Jr.**

Records From: **Kaiser Permanente (Radiology Dept.)**
**1011 South East Street**
**Anaheim, CA, 92805**

| DESCRIPTION OF SERVICES RENDERED | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| **Library Basic Charge** | | | 50.00 |
| **CD of Films Duplicated** | 1.00 | 35.00 | 35.00 |

Comments:

| | | |
|---|---|---|
| SUB-TOTAL | | 85.00 |
| SALES TAX | | 8.08 |
| **TOTAL DUE** | | **$ 93.08** |

Thank you for choosing Titan Legal Services, Inc.l
For inquiries, please contact us at (310) 464-8655.

## PLEASE PAY FROM THIS INVOICE

| TERMS: NET 15 DAYS |
|---|

MAKE CHECKS PAYABLE TO:
Titan Legal Services, Inc.
P.O. BOX 867
Torrance, CA 90508
FEDERAL TAX ID 26-1600646

We recognize that some of our customers may be billing these expenses through
their clients.  In any case, the Titan Legal Services, Inc. customer remains
responsible to pay within our terms regardless of their receivables.

Order#:OP183224-03/WHITARINV



| ACCOUNT NO: | INVOICE DATE: | INVOICE NO: |
|---|---|---|
| CARR38 | September 8, 2022 | OP183227-02-01 |

Bill To:
**Vanessa Beltran**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Ordered By:
**Luis Carrillo, Esq. / Michael Carrillo, Esq.**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

| | |
|---|---|
| Claim No:<br>Insured:<br>Date of Loss:<br>Plaintiff: **Marco Vazquez, Sr., et al.**<br>Defendant: **County of Los Angeles, et al.** | Client File No.:<br>Pertaining To: **Marco Vazquez, Jr.**<br>Records From: **Resurrection Cemetery in Rosemead**<br>**966 Portrero Grande Drive**<br>**Rosemead, CA, 91770** |

| DESCRIPTION OF SERVICES RENDERED | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| **Library Basic Charge** | | | 50.00 |
| **Library Copies (Image only)** | 13.00 | 0.18 | 2.34 |
| **Images E-mailed / Uploaded** | 13.00 | 0.02 | .26 |

| | |
|---|---|
| | SUB-TOTAL 52.60 |
| | SALES TAX 5.00 |
| | TOTAL DUE **$ 57.60** |

Comments:

Thank you for choosing Titan Legal Services, Inc.!
For inquiries, please contact us at (310) 464-8655.

**PLEASE PAY FROM THIS INVOICE**

We recognize that some of our customers may be billing these expenses through their clients. In any case, the Titan Legal Services, Inc. customer remains responsible to pay within our terms regardless of their receivables.

TERMS: NET 15 DAYS

MAKE CHECKS PAYABLE TO:
Titan Legal Services, Inc.
P.O. BOX 867
Torrance, CA 90508
FEDERAL TAX ID 26-1600646

Order#:OP183227-02/WHITINV

*PLEASE INCLUDE OUR INVOICE NUMBER WITH YOUR REMITTANCE*



**INVOICE**

**Titan Legal Services, Inc.**
P.O. Box 867
Torrance, CA 90508
Phone: (310) 464-8655  Fax: (310) 464-8654

| ACCOUNT NO: | INVOICE DATE: | INVOICE NO: |
|---|---|---|
| CARR38 | 8/31/2022 | OP183227-01-01 |

Bill To:
**Vanessa Beltran**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Ordered By:
**Luis Carrillo, Esq. / Michael Carrillo, Esq.**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

| | |
|---|---|
| Claim No: | Client File No.: |
| Insured: | Pertaining To: **Marco Vazquez, Jr.** |
| Date of Loss: | Records From: **Paramount Mortuary FD#2222** |
| Plaintiff: **Marco Vazquez, Sr., et al.** | **13843 Paramount Blvd.** |
| Defendant: **County of Los Angeles, et al.** | **Paramount, CA, 90723** |

| DESCRIPTION OF SERVICES RENDERED | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| **Library Basic Charge** | | | 50.00 |
| **Library Copies (Image only)** | 12.00 | 0.18 | 2.16 |
| **Images E-mailed / Uploaded** | 12.00 | 0.02 | .24 |

Comments:

| | |
|---|---|
| SUB-TOTAL | 52.40 |
| SALES TAX | 4.98 |
| **TOTAL DUE** | **$ 57.38** |

Thank you for choosing Titan Legal Services, Inc.!
For inquiries, please contact us at (310) 464-8655.

**PLEASE PAY FROM THIS INVOICE**

TERMS: NET 15 DAYS

MAKE CHECKS PAYABLE TO:
Titan Legal Services, Inc.
P.O. BOX 867
Torrance, CA 90508
FEDERAL TAX ID 26-1600646

We recognize that some of our customers may be billing these expenses through their clients. In any case, the Titan Legal Services, Inc. customer remains responsible to pay within our terms regardless of their receivables.

Order#:OP183227-01/WHITARINV



# INVOICE

**Titan Legal Services, Inc.**
**P.O. Box 867**
**Torrance, CA 90508**
**Phone: (310) 464-8655  Fax: (310) 464-8654**

| ACCOUNT NO: | INVOICE DATE: | INVOICE NO: |
|---|---|---|
| CARR38 | 8/31/2022 | OP183224-02-01 |

Bill To:
**Vanessa Beltran**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Ordered By:
**Luis Carrillo, Esq. / Michael Carrillo, Esq.**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Claim No:

Insured:

Date of Loss:

Plaintiff: **Marco Vazquez, Sr., et al.**
Defendant: **County of Los Angeles, et al.**

Client File No.:

Pertaining To: **Marco Vazquez, Jr.**

Records From: **Kaiser Permanente (Billing Dept.)**
**10740 4th Street, 2nd Floor**
**Rancho Cucamonga, CA, 91730**

| DESCRIPTION OF SERVICES RENDERED | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| **Library Basic Charge** | | | 50.00 |
| **Library Copies (Image only)** | 25.00 | 0.18 | 4.50 |
| **Images E-mailed / Uploaded** | 25.00 | 0.02 | .50 |

Comments:

| | | |
|---|---|---|
| SUB-TOTAL | 55.00 |
| SALES TAX | 5.23 |
| TOTAL DUE | **$ 60.23** |

**Thank you for choosing Titan Legal Services, Inc.!**
**For inquiries, please contact us at (310) 464-8655.**

| TERMS: NET 15 DAYS |
|---|

## PLEASE PAY FROM THIS INVOICE

MAKE CHECKS PAYABLE TO:
Titan Legal Services, Inc.
P.O. BOX 867
Torrance, CA 90508
FEDERAL TAX ID 26-1600646

We recognize that some of our customers may be billing these expenses through
their clients. In any case, the Titan Legal Services, Inc. customer remains
responsible to pay within our terms regardless of their receivables.



# INVOICE

**Titan Legal Services, Inc.**
P.O. Box 867
Torrance, CA 90508
Phone: (310) 464-8655  Fax: (310) 464-8654

| ACCOUNT NO: | INVOICE DATE: | INVOICE NO: |
|---|---|---|
| CARR38 | 8/31/2022 | OP183224-01-01 |

Bill To:
**Vanessa Beltran**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Ordered By:
**Luis Carrillo, Esq. / Michael Carrillo, Esq.**
**Carrillo Law Firm, LLP**
**1499 Huntington Drive, Suite 402**
**South Pasadena, CA 91030**

Claim No:

Insured:

Date of Loss:

Plaintiff: **Marco Vazquez, Sr., et al.**
Defendant: **County of Los Angeles, et al.**

Client File No.:

Pertaining To: **Marco Vazquez, Jr.**

Records From: **Kaiser Foundation Hospital/SCPMG (Medical Records Dept.)**
**10740 4th St., 2nd Flr.**
**Rancho Cucamonga, CA, 91730**

| DESCRIPTION OF SERVICES RENDERED | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|
| **Library Basic Charge** | | | **50.00** |
| **Library Copies (Image only)** | **229.00** | **0.18** | **41.22** |
| **Images E-mailed / Uploaded** | **229.00** | **0.02** | **4.58** |

**Comments:**

| | |
|---|---|
| SUB-TOTAL | 95.80 |
| SALES TAX | 9.10 |
| **TOTAL DUE** | **$ 104.90** |

**Thank you for choosing Titan Legal Services, Inc.!**
**For inquiries, please contact us at (310) 464-8655.**

## PLEASE PAY FROM THIS INVOICE

**We recognize that some of our customers may be billing these expenses through their clients. In any case, the Titan Legal Services, Inc. customer remains responsible to pay within our terms regardless of their receivables.**

| TERMS: NET 15 DAYS |
|---|

MAKE CHECKS PAYABLE TO:
Titan Legal Services, Inc.
P.O. BOX 867
Torrance, CA 90508
FEDERAL TAX ID 26-1600646

Order#:OP183224-01/WHITARINV

 **Shipment Receipt**

**Transaction Date:** 18 Feb 2020            **Tracking Number:**        1ZJ84DT10121528521

### ① Address Information

**Ship To:**

First Street Courthouse
Honorable Dale S. Fischer
350 West 1st Street
Room 7D
LOS ANGELES CA 900124536

**Ship From:**

Carrillo Law Firm, LLP
Carrillo Law Firm, LLP
1499 Huntington Drive, Suite 402
SOUTH PASADENA CA 91030
Telephone:626-799-9375
email:arcycarranza@gmail.com

**Return Address:**

Carrillo Law Firm, LLP
Carrillo Law Firm, LLP
1499 Huntington Drive, Suite 402
SOUTH PASADENA CA 91030
Telephone:626-799-9375
email:arcycarranza@gmail.com

### ② Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter (Letter billable) | UPS Letter | | Reference#1 - Estate of Marco Antonio Vazquez, Jr |

### ③ UPS Shipping Service and Shipping Options

| | | | | |
|---|---|---|---|---|
| **Service:** | UPS Next Day Air | | | |
| **Guaranteed By:** | 10:30 AM Wednesday, Feb 19, 2020 | | | |
| **Shipping Fees Subtotal:** | 25.90 USD | **Additional Shipping Options** | | |
| **Transportation** | 24.55 USD | **Quantum View Notify E-mail Notifications:** | | No Charge |
| **Fuel Surcharge** | 1.35 USD | 1   ac@carrillofirm.com: | Ship, Exception, Delivery | |
| | | 2   hr@carrillofirm.com: | Ship, Exception, Delivery | |

### ④ Payment Information

**Bill Shipping Charges to:**        American Express xxxxxxxxxxxx2001

| | |
|---|---|
| **Shipping Charges:** | **25.90 USD** |
| **Subtotal Shipping Charges:** | **25.90 USD** |
| **Total Charged:** | **25.90 USD** |

Note: This document is not an invoice. Your final invoice may vary from the displayed reference rates.

3/3/2020                          Create a Shipment | UPS - United States

 **Shipment Receipt**

---

**Transaction Date:** 03 Mar 2020                    **Tracking Number:**          1ZJ84DT10111299995

### ① Address Information

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| First Street U.S. Courthouse<br>Hon. Dale S. Fischer<br>350 W. First Street<br>Courtroom 7D<br>LOS ANGELES CA 900124536 | Carrillo Law Firm, LLP<br>Carrillo Law Firm, LLP<br>1499 Huntington Drive, Suite 402<br>SOUTH PASADENA CA 91030<br>Telephone:626-799-9375<br>email:arcycarranza@gmail.com | Carrillo Law Firm, LLP<br>Carrillo Law Firm, LLP<br>1499 Huntington Drive, Suite 402<br>SOUTH PASADENA CA 91030<br>Telephone:626-799-9375<br>email:arcycarranza@gmail.com |

### ② Package Information

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter<br>(Letter billable) | UPS Letter | | Reference#1 - Marco Antonio Vazquez, Jr. |

### ③ UPS Shipping Service and Shipping Options

**Service:** UPS Next Day Air

**Guaranteed By:** 10:30 AM Wednesday, Mar 4, 2020

**Shipping Fees Subtotal:**         26.08 USD      Additional Shipping Options

|  |  | Quantum View Notify E-mail Notifications: | |
|---|---|---|---|
| Transportation | 24.55 USD | | No Charge |
| Fuel Surcharge | 1.53 USD | 1   ac@carrillofirm.com:   Ship, Exception, Delivery | |
| | | 2   hr@carrillofirm.com:   Ship, Exception, Delivery | |

### ④ Payment Information

**Bill Shipping Charges to:**          American Express xxxxxxxxxxxx2001

| | |
|---|---|
| Shipping Charges: | 26.08 USD |
| Subtotal Shipping Charges: | 26.08 USD |
| Total Charged: | 26.08 USD |

Note: This document is not an invoice. Your final invoice may vary from the displayed reference rates.

# ups Shipment Receipt

**Transaction Date:** 10 Oct 2019          **Tracking Number:**      1ZJ84DT11324887964

## ① ADDRESS INFORMATION

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Los Angeles County Sheriff's Dept. | Carrillo Law Firm, LLP | Carrillo Law Firm, LLP |
| Sheriff Alex Villanueva | Carrillo Law Firm, LLP | Carrillo Law Firm, LLP |
| 211 W. Temple Street | 1499 Huntington Drive, Suite 402 | 1499 Huntington Drive, Suite 402 |
| LOS ANGELES CA 900124086 | SOUTH PASADENA CA 91030 | SOUTH PASADENA CA 91030 |
| | Telephone:626-799-9375 | Telephone:626-799-9375 |
| | email:arcycarranza@gmail.com | email:arcycarranza@gmail.com |

## ② PACKAGE INFORMATION

| | WEIGHT | DIMENSIONS / PACKAGING | DECLARED VALUE | REFERENCE NUMBERS |
|---|---|---|---|---|
| 1. | Letter (Letter billable) | UPS Letter | | Reference#1 - Marco Antonio Vasquez, Jr. |

## ③ UPS SHIPPING SERVICE AND SHIPPING OPTIONS

**Service:**      UPS Next Day Air Saver

**Guaranteed By:**      3:00 PM Friday, Oct 11, 2019

**Shipping Fees Subtotal:**      25.86 USD      Additional Shipping Options

     **Transportation**      24.06 USD

     **Fuel Surcharge**      1.80 USD

**Quantum View Notify E-mail Notifications:**      No Charge

1   ac@carrillofirm.com:      Ship, Exception, Delivery

2   hr@carrillofirm.com:      Ship, Exception, Delivery

## ④ PAYMENT INFORMATION

**Bill Shipping Charges to:**      American Express xxxxxxxxxxxx2001

| | |
|---|---|
| **Shipping Charges:** | 25.86 USD |
| **Subtotal Shipping Charges:** | 25.86 USD |
| **Total Charged:** | 25.86 USD |

Note: This document is not an invoice. Your final invoice may vary from the displayed reference rates.

# Shipment Receipt

| | |
|---|---|
| **Transaction Date:** 10 Oct 2019 | **Tracking Number:** 1ZJ84DT11332533973 |

## (1) ADDRESS INFORMATION

| **Ship To:** | **Ship From:** | **Return Address:** |
|---|---|---|
| Los Angeles County Sheriff's Dept.<br>Captain Phillip R. Marquez<br>6631 Passons Blvd.<br>PICO RIVERA CA 906603645 | Carrillo Law Firm, LLP<br>Carrillo Law Firm, LLP<br>1499 Huntington Drive, Suite 402<br>SOUTH PASADENA CA 91030<br>Telephone:626-799-9375<br>email:arcycarranza@gmail.com | Carrillo Law Firm, LLP<br>Carrillo Law Firm, LLP<br>1499 Huntington Drive, Suite 402<br>SOUTH PASADENA CA 91030<br>Telephone:626-799-9375<br>email:arcycarranza@gmail.com |

## (2) PACKAGE INFORMATION

| | WEIGHT | DIMENSIONS / PACKAGING | DECLARED VALUE | REFERENCE NUMBERS |
|---|---|---|---|---|
| 1. | Letter<br>(Letter billable) | UPS Letter | | Reference#1 - Marco Antonio Vasquez, Jr. |

## (3) UPS SHIPPING SERVICE AND SHIPPING OPTIONS

| | |
|---|---|
| **Service:** | UPS Next Day Air Saver |
| **Guaranteed By:** | 3:00 PM Friday, Oct 11, 2019 |
| **Shipping Fees Subtotal:** | 25.86 USD |
| Transportation | 24.06 USD |
| Fuel Surcharge | 1.80 USD |

Additional Shipping Options

Quantum View Notify E-mail Notifications:      No Charge

1   ac@carrillofirm.com:    Ship, Exception, Delivery

2   hr@carrillofirm.com:    Ship, Exception, Delivery

## (4) PAYMENT INFORMATION

**Bill Shipping Charges to:**      American Express xxxxxxxxxxxx2001

| | |
|---|---|
| **Shipping Charges:** | 25.86 USD |
| **Subtotal Shipping Charges:** | 25.86 USD |
| **Total Charged:** | 25.86 USD |

Note: This document is not an invoice. Your final invoice may vary from the displayed reference rates.

*Vasquez v. County of Los Angeles*

**Law Offices of Dale K. Galipo**
**Total Litigation Costs Advanced as of 11/6/2023**

| Date | Description | Amount |
|---|---|---|
| 8/31/2022 | Ck 8744 to Joseph S. Biderman re mediation | $3,500.00 |
| | | |
| | | |
| | **EXPERTS** | |
| | N/A | |
| | | |
| | **FEDEX/POSTAGE** | |
| 8/31/2022 | FedEx of Ck 8744 to Judge Biderman | $20.55 |
| 3/3/2023 | FedEx of chambers copy of Plaintiffs' Opposition to Motion to Dismiss | $22.42 |
| 6/9/2023 | FedEx of chambers copy of Plaintiffs' Motion for Leave to Extend Time to Respond to Nominal Defs' Counterclaim | $22.47 |
| 6/21/2023 | FedEx of chambers copy of Joint Stip. to Continue Dates | $14.20 |
| | | |
| | **PARKING/MILEAGE/TRANSPORTATION** | |
| | N/A | |
| | | |
| | **COPY/PRINT/SCAN          (Metered)** | |
| | | $295.00 |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL:** | **$3,874.64** |

# EXHIBIT C

EXHIBIT A

## Terms and Conditions of the Annuity for J██ L█████████ V████████

The Court so orders that $118,345.00 be paid by Defendant and/or its Insurer ("Payor") to purchase a structured settlement annuity, in which MetLife Assignment Company (←Assignee) will provide for the following Periodic Payments to be made by Metropolitan Tower Life Insurance Company (←Annuity Issuer), an A+ (Superior) by A.M. Best. The details of the periodic payments of which will be set forth below. All sums constitute damages on account of personal physical injuries arising from an occurrence within the meaning of Section 104(a)(2) of the Internal Revenue Code.

The periodic payment schedule is as follows:

**PAYEE: J██ L█████████ V████████**

    **Lump Sum Payments**
    $50,000.00 guaranteed lump sum payment at age 18 on 07/01/2034
    $65,000.00 guaranteed lump sum payment at age 20 on 07/01/2036
    $82,939.39 guaranteed lump sum payment at age 22 on 07/01/2038

    **FUNDING INSTRUCTIONS:**

| | |
|---|---|
| Check Amount: | **$118,345.00** |
| Check Payable To: | **METLIFE ASSIGNMENT COMPANY, INC.** |
| Tax ID#: | **38-4035918** |
| | |
| Send Check To: | Tory Owens Structured Settlements |
| | 13157 Mindanao Way, Suite 499 |
| | Marina Del Rey, CA 90292 |

The future periodic payment amounts outlined herein are guaranteed based upon a projected annuity purchase date of 10/29/2025. Interest rates are volatile, and the above periodic payments may vary until locked in, which is a commitment to purchase; therefore, <u>IF THE RATE IS NOT LOCKED IN OR LATE FUNDING OCCURS IT MAY REQUIRE REVISION OF THE ABOVE PERIODIC PAYMENTS</u>. Furthermore, any delay in funding the annuity may result in a delay of the payment dates or change in payment amounts. Any revisions to the periodic payments shall be recorded in the settlement agreement and release or the Addendum to the Settlement Agreement and Release, and/or qualified assignment document and annuity contract without the need of obtaining an amended Petition/Court Order/Infants Compromise Order. The Assignee and Annuity Owner are expressly authorized to make any date adjustments if there is a funding delay and reflect such date changes in the annuity contract and the qualified assignment agreement.

Payee acknowledges and agrees that the Defendant(s) and/or the PAYOR shall make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendant's and/or the PAYOR's liability to make the Periodic Payments required herein. Any such assignment, shall be accepted by the Payee without right of rejection and shall completely release and discharge the Defendant(s) and the PAYOR from such obligations hereunder as are assigned MetLife Assignment Company ("Assignee"). The Payee recognizes that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the

Periodic Payments assigned, and that all other releases that pertain to the liability of the Defendant(s) and the PAYOR shall thereupon become final, irrevocable and absolute.

If the liability to make the periodic payments is assigned by way of a "qualified assignment."

A)      Periodic payments from the Assignee cannot be accelerated, deferred, increased or decreased by Payee;

B)      The periodic payments from the Assignee will be fixed and determinable and may not be varied by any party;

C)      The Assignee does not provide to the Payee rights against the Assignee greater than those of a general creditor;

D)      The Assignee's obligation for payment of the periodic payments is no greater than the obligation of the person or entity originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned.

The sole obligor of the Periodic payments, whether it is the Defendant(s), the PAYOR, and/or the Assignee, reserves the right to fund the liability to make the Periodic Payments by purchasing an annuity through Metropolitan Tower Life Insurance Company ("Annuity Issuer"). The Defendant(s), the PAYOR, or in the event of an assignment the Assignee, shall be the sole owner of the annuity and have all rights in it. Said owner of the annuity may have Metropolitan Tower Life Insurance Company mail payments direct to the Payee. Payee shall be responsible for maintaining a current mailing address for Payee with Metropolitan Tower Life Insurance Company

The obligation of the Defendant(s), the PAYOR, or in the event of an assignment, the obligation of its Assignee, to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment as stated herein to the designated address of the Payee. If the Payee or Beneficiary notifies the Assignee that any such check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

Any payments to be made after the death of any Payee pursuant to the terms of this Agreement shall be made to such person or entity as shall be designated in writing by Claimant, upon reaching the age of majority, to the Insurer's Assignee. If no person or entity is so designated by Claimant, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer or the Insurer's Assignee. The designation must be in a form acceptable to the Insurer's Assignee before such payments are made.

### ATTACHMENT 8b(2) To MC-351 • ATTACHMENT 18b(3) TO MC-350 • ATTACHMENT 19b(3) To MC-350EX

## Terms and Conditions of the Annuity for M▮▮▮ A▮▮▮▮▮ V▮▮▮▮

The Court so orders that $118,345.00 be paid by Defendant and/or its Insurer ("Payor") to purchase a structured settlement annuity, in which MetLife Assignment Company (←Assignee) will provide for the following Periodic Payments to be made by Metropolitan Tower Life Insurance Company (←Annuity Issuer), an A+ (Superior) by A.M. Best. The details of the periodic payments of which will be set forth below. All sums constitute damages on account of personal physical injuries arising from an occurrence within the meaning of Section 104(a)(2) of the Internal Revenue Code.

The periodic payment schedule is as follows:

**PAYEE: M▮▮▮ A▮▮▮▮▮▮ V▮▮▮▮**

> **Lump Sum Payments**
> $50,000.00  guaranteed lump sum payment at age 18 on 08/26/2037
> $75,000.00  guaranteed lump sum payment at age 20 on 08/26/2039
> $112,287.75 guaranteed lump sum payment at age 22 on 08/26/2041
>
> **FUNDING INSTRUCTIONS:**
> Check Amount:            **$118,345.00**
> Check Payable To:        **METLIFE ASSIGNMENT COMPANY, INC.**
> Tax ID#:                 **38-4035918**
>
> Send Check To:           Tory Owens Structured Settlements
>                          13157 Mindanao Way, Suite 499
>                          Marina Del Rey, CA 90292

The future periodic payment amounts outlined herein are guaranteed based upon a projected annuity purchase date of 10/29/2025. Interest rates are volatile, and the above periodic payments may vary until locked in, which is a commitment to purchase; therefore, IF THE RATE IS NOT LOCKED IN OR LATE FUNDING OCCURS IT MAY REQUIRE REVISION OF THE ABOVE PERIODIC PAYMENTS. Furthermore, any delay in funding the annuity may result in a delay of the payment dates or change in payment amounts. Any revisions to the periodic payments shall be recorded in the settlement agreement and release or the Addendum to the Settlement Agreement and Release, and/or qualified assignment document and annuity contract without the need of obtaining an amended Petition/Court Order/Infants Compromise Order. The Assignee and Annuity Owner are expressly authorized to make any date adjustments if there is a funding delay and reflect such date changes in the annuity contract and the qualified assignment agreement.

Payee acknowledges and agrees that the Defendant(s) and/or the PAYOR shall make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendant's and/or the PAYOR's liability to make the Periodic Payments required herein. Any such assignment, shall be accepted by the Payee without right of rejection and shall completely release and discharge the Defendant(s) and the PAYOR from such obligations hereunder as are assigned MetLife Assignment Company ("Assignee"). The Payee recognizes that,

in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments assigned, and that all other releases that pertain to the liability of the Defendant(s) and the PAYOR shall thereupon become final, irrevocable and absolute.

If the liability to make the periodic payments is assigned by way of a "qualified assignment."

A)    Periodic payments from the Assignee cannot be accelerated, deferred, increased or decreased by Payee;

B)    The periodic payments from the Assignee will be fixed and determinable and may not be varied by any party;

C)    The Assignee does not provide to the Payee rights against the Assignee greater than those of a general creditor;

D)    The Assignee's obligation for payment of the periodic payments is no greater than the obligation of the person or entity originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned.

The sole obligor of the Periodic payments, whether it is the Defendant(s), the PAYOR, and/or the Assignee, reserves the right to fund the liability to make the Periodic Payments by purchasing an annuity through Metropolitan Tower Life Insurance Company ("Annuity Issuer"). The Defendant(s), the PAYOR, or in the event of an assignment the Assignee, shall be the sole owner of the annuity and have all rights in it. Said owner of the annuity may have Metropolitan Tower Life Insurance Company mail payments direct to the Payee. Payee shall be responsible for maintaining a current mailing address for Payee with Metropolitan Tower Life Insurance Company

The obligation of the Defendant(s), the PAYOR, or in the event of an assignment, the obligation of its Assignee, to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment as stated herein to the designated address of the Payee. If the Payee or Beneficiary notifies the Assignee that any such check or electronic funds transfer was not received, the Assignee shall direct the Annuity Issuer to initiate a stop payment action and, upon confirmation that such check was not previously negotiated or electronic funds transfer deposited, shall have the Annuity Issuer process a replacement payment.

Any payments to be made after the death of any Payee pursuant to the terms of this Agreement shall be made to such person or entity as shall be designated in writing by Claimant, upon reaching the age of majority, to the Insurer's Assignee. If no person or entity is so designated by Claimant, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer or the Insurer's Assignee. The designation must be in a form acceptable to the Insurer's Assignee before such payments are made.

# EXHIBIT D

# Metropolitan Tower Life Insurance Company

A Stock Company
[1209 Orange Street
Wilmington, DE 19801]

**NOTICE**

To obtain information about the Contract or if you, the Owner, need assistance or need help in resolving a complaint, you may call [**(800)-638-2704**]

Metropolitan Tower Life Insurance Company (referred to as "We, Us and Our") will make payments as described in this Contract in the Payments Schedule section on the Contract Specifications.

This Contract is issued in return for the payment of the Single Premium.

***FREE LOOK PROVISION – RIGHT TO CANCEL***

**This Contract may be returned for any reason within [10] days after the Owner receives it by mailing or otherwise surrendering the Contract to either Us or the agent who sold it together with a written request for cancellation.  Return of this Contract by mail is effective on being postmarked, properly addressed and postage prepaid.  If the Owner returns it within the [10] day period, the Contract will be cancelled.  We will promptly refund the Single Premium, less any prior payments made by us.**

Signed for the Company.

[
Jeannette N. Pina
Vice President and Secretary

Graham Cox
Presiding Officer of the Board and President

]

**[Notice**

**This Contract has been delivered to the possession of John Doe for the sole purpose of perfecting a lien and security interest of such person in this Contract. John Doe is not the Owner of, and has no ownership rights in this Contract and cannot anticipate, sell, assign, pledge, encumber, or otherwise use this Contract as any form of collateral. Please contact us for further information.]**

*INDIVIDUAL SINGLE PREMIUM SETTLEMENT ANNUITY CONTRACT*

*NON-PARTICIPATING*

*THIS CONTRACT DOES NOT PROVIDE ANY CASH SURRENDER VALUES*

*READ THE CONTRACT CAREFULLY*

Form 8.I.1000

# TABLE OF CONTENTS

Contract Specifications      [Page 3

Definitions      Page 4

General Provisions      Page 5-7

       Cash Value      Page 5
       Ownership
       Payments
       Change of Payee or Beneficiary
       Contestability

       Misstatement      Page 6]
       Nonassignability; Claims of Creditors
       Proof of Living/Death
       Non-Participating
       Entire Contract

Form 8.I.1000

## CONTRACT SPECIFICATIONS

**Owner**:                     [ABC Assignment Company]

**Measuring Life:**            [John Jones]
   Sex**:**               [M]
   Date of Birth:         [07/13/1957]

[**Joint Measuring Life**:     [Mary Jones]
   Sex**:**               [F]
   Date of Birth          [06/22/1960]]

**Contract Number:**           [12345]          **ISSUE DATE**:    [06/01/2017]


**PAYMENTS SCHEDULE:**
 [
1)  [$XXX.XX] for life, payable monthly. Payments starting on [XX/XX/20XX]. Payments will
    cease upon the death of the Measuring Life.


2)  [$XXX.XX] for Life, payable monthly, guaranteed for [XX] years. Payments starting on
    [XX/XX/20XX] with last guaranteed payment on [XX/XX/20XX]. We will pay the payments
    for as long as the Measuring Life lives. Payments will cease upon the later of the death of
    the Measuring Life and the last guaranteed payment date. If the Measuring Life dies before
    the last guaranteed payment date, the remaining guaranteed payments will continue to the
    Beneficiary until that date.]

3

Form 8.I.1000

## DEFINITIONS

1.  "We, Us, Our" means Metropolitan Tower Life Insurance Company.

2.  "Contract" means this Contract excluding any additional benefit for which a separate premium is charged.

3.  "Our Office" means the Home Office, [1209 Orange Street, Wilmington, DE 19801] (Mailing address:  [P.O. Box 14403, Lexington, KY  40512-4403]) or any other office which We may name for the purpose of administering this Contract.

4.  "Measuring Life" is the person whose life is used to calculate the payments shown under the Payments Schedule on the Contract Specifications Page.  The Measuring Life is shown on the Contract Specifications page.

5.  "Joint Measuring Life" is the person whose life is used in combination with the life of the Measuring Life to calculate payments, if a Joint Measuring Life payment option is selected and shown under the Payments Schedule on the Contract Specifications Page. The Joint Measuring Life, if any, is shown on the Contract Specifications page.

6.  "Payee" is the person(s), or entity(ies), to whom payments shown under the Payments Schedule on the Contract Specifications Page will be made.  The Payee is named by the Owner in the application or in a later designation.

7.  "Beneficiary" is the person shown on the application, or by later designation, to receive the remaining guaranteed payments upon the death of the Measuring Life and Joint Measuring Life, if any, as described under the Payments Schedule on the Contract Specifications Page.

4

## GENERAL PROVISIONS

Cash Value
This Contract does not have cash or surrender values.

Ownership
The contract owner ("Owner") is the person or entity shown on the application and the
Contract Specifications page.

The Owner may exercise all rights provided in this Contract prior to the death of the
Measuring Life and, if any, the Joint Measuring Life; provided however that the Owner
may not change the Measuring Life and/or the Joint Measuring Life, after the Issue Date.

Payments
We will pay the Owner, or such person(s) as the Owner may designate as the Payee, the
payments specified under the Payments Schedule on the Contract Specifications page.
The Owner may not change the payment type or frequency after the Issue Date.

Beneficiary
Upon the last death of the Measuring Life, and, if any, the Joint Measuring Life, We will
pay the Beneficiary the remaining guaranteed payments, if any, specified in the Payments
Schedule on the Contract Specifications Page. If two or more Beneficiaries are designated
and alive when payment is due, payment will be made in equal shares to them unless
stated otherwise. The Beneficiary may not assign any payment to be paid to the
Beneficiary under this Contract.

If any Beneficiary dies before the Measuring life, and if any, the Joint Measuring Life, that
Beneficiary's interest will pass to any other Beneficiary or contingent beneficiary, if any, as
named in the application. If guaranteed payments are being made to the last surviving
Beneficiary, and such Beneficiary dies before all guaranteed payments have been made,
such payments will be paid to that Beneficiary's estate (or as stated in the application or
by later designation).   If no Beneficiary is named or alive upon the last death of the
Measuring Life, and, if any, the Joint Measuring Life, We will make any remaining
guaranteed payments to estate of Measuring Life, or the Joint Measuring Life, if any.

Change of Payee or Beneficiary
The Owner may change the Payee or Beneficiary designation during the lifetime of the
last to survive of the Measuring Life and, if any, the Joint Measuring Life only by filing with
Us at Our Office written notice in a form satisfactory to Us. A change of designation will
take effect as of the date the written notice is signed, but We will not be liable for any
payments made or action taken before We have received a copy of the written notice at
Our Office.

Contestability
After the Contract has been in effect for two years from its Issue Date, We will not use
material misstatements made in the application to contest this Contract.

5

Form 8.I.1000

Misstatement
If the Measuring Life's or, if any, Joint Measuring Life's date of birth or sex has been misstated, any  future payments will be adjusted to the amount which the premium paid would have purchased at the correct age and sex.  Age refers to the Measuring Life's age nearest birthday on the Issue Date. Any prior overpayments made or underpayments due will be recovered or paid out by Us either 1) by adjusting future payments to deduct any overpayment or to add any underpayment or 2) as mutually agreed to by Us and the Owner.

Nonassignability; Claims of Creditors
This Contract is not assignable.   It cannot be transferred, assigned or pledged as collateral for a loan, and the payments provided under it are not assignable, cannot be changed, accelerated, or paid before the payment due date, and will be exempt from the claims of creditors to the maximum extent permitted by law. Further, no payments under this contract are payable in a single-sum value (i.e., payments are not commutable.)

Proof of Living/Death
Proof of Living:  If the Payments Schedule on the Contract Specifications page provides for payments for so long as the Measuring Life, and if any, the Joint Measuring Life, shall live, We may require as a condition to making such payment, proof that the Measuring Life or the Joint Measuring Life is living on any payment date.  Additionally, we may require proof that the Payee or Beneficiary, as the case may be, is living on the date which any payment is to be made.  Such request will only be made pursuant to normal auditing procedures or if We have reason to believe that the Measuring Life, Joint Measuring Life, Payee or Beneficiary is dead and/or is not receiving the payments to which he or she is entitled.  If proof is requested, then We will not make any further payments until satisfactory proof is received.

Proof of Death: If the Payments Schedule on the Contract Specifications page provides for payments of any remaining guaranteed payments by reason of the death of the Measuring Life and/or Joint Measuring Life, We may require proof of death of the Measuring Life and, if any, Joint Measuring Life before We will make such payment. Our obligation to the respective Joint Measuring Life, or Beneficiary, if any, or other successor in interest will only arise upon Our receipt of proof of death of the deceased Payee.

Any requested Proof of Living or Proof of Death must be submitted to Our Office.

Non-Participating
This Contract is non-participating.  It does not share in our surplus earnings, so the Owner will not receive any dividends under it.

Entire Contract
This Contract is issued in consideration of the application and the payment of the Single Premium as shown in the application.

The entire Contract consists of this Contract, all attached pages and the application.  All statements in the application will be considered to be made to the best knowledge and belief of the applicant and not as promises of truth.  We will not use any statement to contest this Contract unless it is contained in the written application.

Form 8.I.1000

No sales representative or other person, except an authorized officer of Our company, may make or change any contract or make any binding promises about any contract on behalf of our company.  Any amendment, modification or waiver of any provision of this Contract will be in writing and may be made effective on behalf of Our company only by an authorized officer of Our company.



7

# EXHIBIT E

🖨 Print This Page

MARCH 06, 2025 04:07 PM (EST)

# AM Best Affirms Credit Ratings of MetLife, Inc. and Its Life/Health Subsidiaries

**CONTACTS:**

Louis Silvers
Senior Financial Analyst
+1 908 882 2316
louis.silvers@ambest.com

Erik Miller
Director
+1 908 882 2120
erik.miller@ambest.com

Christopher Sharkey
Associate Director, Public Relations
+1 908 882 2310
christopher.sharkey@ambest.com

Al Slavin
Senior Public Relations Specialist
+1 908 882 2318
al.slavin@ambest.com

**FOR IMMEDIATE RELEASE**

OLDWICK - MARCH 06, 2025 04:07 PM (EST)
**AM Best** has affirmed the Financial Strength Rating (FSR) of A+ (Superior) and the Long-Term Issuer Credit Ratings (Long-Term ICR) of "aa-" (Superior) of the members of Metropolitan Life Insurance Group (collectively referred to as MetLife or the group). Concurrently, AM Best has affirmed the Long-Term ICR of "a-" (Excellent) and the Long- and Short-Term Issue Credit Ratings (Long-Term IR; Short-Term IR) of MetLife, Inc. (headquartered in New York, NY) [NYSE: MET]. The outlook of these Credit Ratings (ratings) is stable. (See below for a detailed listing of companies and Long- and Short-Term IRs.)

The ratings reflect MetLife's balance sheet strength, which AM Best assesses as strong, as well as its strong operating performance, very favorable business profile and appropriate enterprise risk management (ERM).

MetLife's strong balance sheet strength assessment is supported by AM Best's view of the consolidated holding company's capital adequacy that is enhanced by the financial flexibility and the liquidity of its ultimate parent (MetLife, Inc.), which historically has maintained significant and steady levels of excess liquidity. Additionally, there has been a longer-term trend toward reduced liability risk on MetLife's balance sheet, related to equity and interest rate risk as its product portfolio changes over time. MetLife's financial leverage and interest coverage levels are at appropriate levels for the ratings. There are some risks with mortgage exposure and AM Best will continue to monitor the group's exposure.

The group has a history of growing revenue and consistently positive operating performance metrics on a statutory and GAAP basis. Earnings are well-diversified by geography, business line and distribution channel. The group benefits segment has strong earnings and moderate growth with low earnings volatility. AM Best views the group's operating performance as strong, with its focus on expanding its product offerings, concentration on higher margin product lines with steadier returns and lower expenses. AM Best views the group's ERM as appropriate, as it continues to focus on improving its overall program, capital modeling and stress testing.

The ratings also reflect the group's strong and defensible market positions in many of its core lines of business and the diversity in its product offerings and geographic markets in the United States, Asia and Latin America, as well as the Europe, Middle East and Africa regions.

The FSR of A+ (Superior) and the Long-Term ICRs of "aa-" (Superior) have been affirmed with stable outlooks for the following subsidiaries of MetLife, Inc.:

· Delaware American Life Insurance Company

· Metropolitan Life Insurance Company

· Metropolitan Tower Life Insurance Company

· SafeGuard Health Plans, Inc. (TX)

· SafeGuard Health Plans, Inc. (FL)

· SafeGuard Health Plans, Inc. (CA)

· MetLife Global Benefits, Ltd.

· Metropolitan General Insurance Company

The following Short-Term IRs have been affirmed:

MetLife Funding, Inc.—

- AMB-1+ (Strongest) on commercial paper

MetLife, Inc.—

- AMB-1 (Outstanding) on commercial paper

The following Long-Term IRs have been affirmed with a stable outlook:

MetLife, Inc.—

- "a-" (Excellent) on USD 500 million 3.60% senior unsecured notes, due 2025

- "a-" (Excellent) on USD 500 million 3.0% senior unsecured notes, due 2025

- "a-" (Excellent) on JPY 25.2 billion 0.495% senior unsecured notes, due 2026

- "a-" (Excellent) on JPY 64.9 billion 0.769% senior unsecured notes, due 2029

- "a" (Excellent) on JPY 7.1 billion 1.009% senior unsecured notes, due 2029

- "a-" (Excellent) on USD 1.0 billion 4.55% senior unsecured notes, due 2030

- "a-" (Excellent) on JPY 23.1 billion 1.415% senior unsecured notes, due 2031

- "a-" (Excellent) on JPY 10.7 billion 0.898% senior unsecured notes, due 2031

- "a-" (Excellent) on USD 600 million 6.50% senior unsecured notes, due 2032

- "a-" (Excellent) on USD 1.0 billion 5.375% senior unsecured notes, due 2033

- "a-" (Excellent) on JPY 16.7 billion 1.67% senior unsecured notes, due 2034

- "a-" (Excellent) on USD 750 million 6.375% senior unsecured notes, due 2034

- "a-" (Excellent) on JPY 26.5 billion 1.189% senior unsecured notes, due 2034

- "a-" (Excellent) on USD 750 million 5.3% senior unsecured notes, due 2034

- "a-" (Excellent) on USD 1.0 billion 5.70% senior unsecured notes, due 2035

- "a-" (Excellent) on JPY 24.4 billion 1.385% senior unsecured notes, due 2039

- "a-" (Excellent) on JPY 11.2 billion 1.953% senior unsecured notes, due 2039

- "a-" (Excellent) on USD 750 million 5.875% senior unsecured notes, due 2041

- "a-" (Excellent) on USD 750 million 4.125% senior unsecured notes, due 2042

- "a-" (Excellent) on USD 1.0 billion 4.875% senior unsecured notes, due 2043

- "a-" (Excellent) on JPY 15.5 billion 2.195% senior unsecured notes, due 2044

- "a-" (Excellent) on USD 500 million 4.721% senior unsecured debentures, due 2044

- "a-" (Excellent) on USD 1.0 billion 4.05% senior unsecured notes, due 2045

- "a-" (Excellent) on USD 750 million 4.6% senior unsecured notes, due 2046

- "a-" (Excellent) on USD 1 billion 5.0% senior unsecured notes, due 2052

- "a-" (Excellent) on USD 1 billion 5.25% senior unsecured notes, due 2054

- "a-" (Excellent) on JPY 23.5 billion 2.39% senior unsecured notes, due 2054

- "a-" (Excellent) on JPY 15.2 billion 2.448% senior unsecured notes, due 2059

- "bbb" (Good) on USD 1.25 billion 6.40% junior subordinated debentures, due 2066

- "bbb" (Good) on USD 500 million 10.75% junior subordinated debentures, due 2069

- "bbb" (Good) on USD 600 million floating rate non-cumulative preferred stock, Series A

- "bbb" (Good) on USD 500 million 5.875% non-cumulative preferred stock, Series D

- "bbb" (Good) on USD 805 million 5.625% non-cumulative preferred stock, Series E

- "bbb" (Good) on USD 1.0 billion 4.75% non-cumulative preferred stock, Series F

- "bbb" (Good) on USD 1.0 billion 3.85% non-cumulative preferred stock, Series G

MetLife Capital Trust IV—

- "bbb" (Good) on USD 700 million 7.875% exchangeable surplus trust securities (junior subordinated), due 2067

Metropolitan Life Insurance Company—

- "a" (Excellent) on USD 250 million 7.80% surplus notes, due 2025

Metropolitan Life Global Funding I— "aa-" (Superior) program rating

- "aa-" (Superior) on all outstanding notes issued under the program

The following indicative Long-Term IRs have been affirmed stable outlooks:

MetLife, Inc. —

- "a-" (Excellent) on senior unsecured debt

- "bbb+" (Good) on subordinated debt

- "bbb" (Good) on preferred stock

**This press release relates to Credit Ratings that have been published on AM Best's website. For all rating information relating**

to the release and pertinent disclosures, including details of the office responsible for issuing each of the individual ratings referenced in this release, please see AM Best's **Recent Rating Activity** web page. For additional information regarding the use and limitations of Credit Rating opinions, please view **Guide to Best's Credit Ratings**. For information on the proper use of Best's Credit Ratings, Best's Performance Assessments, Best's Preliminary Credit Assessments and AM Best press releases, please view **Guide to Proper Use of Best's Ratings & Assessments**.

**AM Best is a global credit rating agency, news publisher and data analytics provider specializing in the insurance industry. Headquartered in the United States, the company does business in over 100 countries with regional offices in London, Amsterdam, Dubai, Hong Kong, Singapore and Mexico City.**

## Related Companies

For information about each company, including the Best's Credit Reports, group members (where applicable) and news stories, click on the company name. An additional purchase may be required.

| AMB# | Company Name |
|------|--------------|
| 006305 | Delaware American Life Insurance Company |
| 059297 | MetLife Capital Trust IV |
| 059065 | MetLife Funding, Inc. |
| 092935 | MetLife Global Benefits, Ltd. |
| 058175 | MetLife, Inc. |

1 2 3

Contact

Locations

Accessibility Statement
Cookie Notice
Legal & Licensing
Privacy Notice
Regulatory Information
Site Map
Terms of Use

Copyright © 2025 A.M. Best Company, Inc. and/or its affiliates. All rights reserved.



# EXHIBIT F



### Metropolitan Tower Life Insurance Company
### Lincoln, NE

## Evidence of Guarantee

Pursuant to authority granted by its Board of Directors, Metropolitan Tower Life Insurance Company ("Met Tower Life") has agreed to guarantee any payment or other obligation required to be made or performed by MetLife Assignment Company, Inc., a wholly owned subsidiary of MetLife, on or after May 15, 2017 in connection with the purchase of annuities from Met Tower Life.

**Melissa Moore**
**Senior Vice President**
**Metropolitan Tower Life Insurance Company**